566 F.2d 541
 2 Fed. R. Evid. Serv. 919
 Dyrell Glenn BRYAN, Plaintiff-Appellee,
v.
JOHN BEAN DIVISION OF FMC CORPORATION, Defendant-Third-Party
Plaintiff Appellant-Cross Appellee,
v.
MIDLAND-ROSS CORPORATION, Third-Party Defendant-Appellee
Cross Appellant,
Royal-Globe Insurance Company, Intervenor-Appellee.
 No. 75-3657.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 20, 1978.
 
 John E. Gunter, Emil C. Rassman, Midland, Tex., for John Bean Division of FMC Corp.
 John H. Green, Odessa, Tex., for Dyrell Glenn Bryan.
 James B. Sales, Russell H. McMains, L. S. Carsey, Houston, Tex., for Midland-Ross Corp.
 George M. Kelton, Odessa, Tex., for Royal-Globe Ins. Co.
 Appeals from the United States District Court for the Western District of Texas.
 Before GODBOLD and CLARK, Circuit Judges, and HOFFMAN, District Judge.*
 GODBOLD, Circuit Judge:
 
 
 1
 Plaintiff, an automobile mechanic, was injured in December 1971. A cast-iron tool known as a clevis, used in bending an automobile axle for wheel alignment, broke into pieces under pressure, and one of the pieces struck plaintiff, causing loss of an eye and allegedly causing back injuries. He sued John Bean Corporation, which had designed and distributed the clevis as part of a wheel alignment kit, basing his case on strict liability in tort under Texas law. Bean filed a third party claim for contribution or indemnity against defendant Midland-Ross, allegedly the foundry that cast the clevis for Bean.
 
 
 2
 A jury returned a verdict for plaintiff against Bean and assessed damages of $800,000. In answer to Rule 49(a) special interrogatories, set out in the margin,[1] the jury found that Midland-Ross had made the clevis and that both defective design and defective manufacture of the clevis were producing causes of the accident. The jury also found that Bean had failed to warn plaintiff against the dangers of foreseeable misuse of the product, but that this failure to warn was not a producing cause of the accident. Judgment was entered in favor of plaintiff against Bean on the general verdict. On the basis of the special finding of defective manufacture, the court entered judgment in favor of Bean and against Midland-Ross as a joint tort-feasor for contribution of one-half of any amount paid by Bean to plaintiff.
 
 
 3
 Both defendants appeal, alleging numerous errors. We affirm the judgment against Bean on the basis of design defect and reverse and remand for a new trial on the liability of Midland-Ross for defective manufacture.
 
 I. Manufacturing defect
 
 4
 Plaintiff's metallurgical expert, Anderson, testified that the clevis broke because of manufacturing defects. It contained a dangerous crack, high levels of porosity and impurity, and was overly brittle as measured by the Brinell hardness number, a test of the hardness and tensile strength of metal.[2] On the other hand, Walters, expert witness for Midland-Ross, testified that the clevis as manufactured was sufficiently strong to sustain the stress it would have encountered in normal use in the proper manner. Walters had not examined the clevis. He at least partially based his opinion regarding the level of porosity and impurities present in the clevis on data established by two metallurgists, Lambert (expert for plaintiff) and Wiseman (expert for Bean), neither of whom testified at trial. Both Lambert and Wiseman had rendered written reports of their findings, each concluding with his opinions on the reason the clevis failed. On cross-examination of Walters, plaintiff's counsel made maximum use of the opinions expressed in the two reports. He paraphrased parts of them in questioning, he read from them verbatim, and he referred to them in his jury argument. He made much greater use of the opinions than of the data underlying them.
 
 
 5
 Midland-Ross objected on the ground that the facts recited in the reports were admissible but the opinions of the experts were not. Later Bean joined in objecting. The district court overruled, stating that the opinions were admissible because they were supporting data for Walters' opinion. The court gave what was intended to be a limiting instruction, quoted in note 6 infra. By admitting this evidence the court committed error requiring reversal of the verdict in favor of Bean and against Midland-Ross.[3]
 
 
 6
 Plaintiff argues that rule 705 of the Federal Rules of Evidence[4] permits the opinions of Lambert and Wiseman to be admitted as "underlying facts or data" on which the testifying expert (Walters) based his opinion. Rule 705, while continuing the often-criticized use of hypothetical questions, removes the need for the expert to make elaborate disclosures of the bases of his opinion. Rather, the onus of eliciting the bases of the opinion is placed on the cross-examiner. Additionally, the Advisory Committee Note to rule 705 explicitly contemplates that in attempting to impeach the opinion the cross-examiner will elicit information concerning the basis of the opinion unfavorable to the opinion itself.
 
 
 7
 The modern view in evidence law recognizes that experts often rely on facts and data supplied by third parties. See Fed.R.Evid. 703. Rules 703 and 705 codify the approach of this and other circuits that permits the disclosure of otherwise hearsay evidence for the purpose of illustrating the basis of the expert witness' opinion. See International Paper Co. v. U. S., 227 F.2d 201 (CA5, 1955) (opinion of fair value of condemned property based on similar sale); U. S. v. Featherston, 325 F.2d 539 (CA10, 1963) (same); U. S. v. Sowards, 339 F.2d 401 (CA10, 1964) (same); Brown v. U. S., 126 U.S.App.D.C. 134, 375 F.2d 310 (1966), cert. denied, 388 U.S. 915, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967) (doctor's testimony on defendant's insanity based in part on reports of other doctors); Baltimore & O.R.R. v. O'Neill, 211 F.2d 190 (CA6, 1954), rev'd on other grounds, 348 U.S. 956, 75 S.Ct. 447, 99 L.Ed. 747 (1955) (X-ray reports). Courts have even permitted the admission of hearsay opinion on the ultimate issue if some guarantee of trustworthiness existed. See Long v. U. S., 59 F.2d 602 (CA4, 1932), cited with approval in Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Since rule 705 shifts to the cross-examiner the burden of eliciting the bases of an expert witness' opinion, otherwise hearsay evidence that reveals the underlying sources of the expert's opinion should be as permissible on cross-examination as on direct. Moreover, otherwise hearsay evidence disclosing the basis of an expert witness' opinion should be admissible to impeach if strictly limited to that purpose by instructions and if, in the discretion of the judge, the impeaching evidence has sufficient guarantee of reliability that the prophylactic effect of the hearsay rule is not necessary to ensure trustworthiness.
 
 
 8
 Despite this rule of limited admissibility, we hold that the parts of the Wiseman and Lambert opinions brought out by plaintiff's counsel were improperly admitted either as evidence of the basis of the testifying expert's opinion or as impeachment evidence.
 
 
 9
 Like all exceptions to the hearsay rule the full disclosure of the source underlying a testifying expert's opinion depends upon the two critical factors of necessity and trustworthiness. See 5 J. Wigmore, Evidence § 1420-23 (Chadbourn rev. ed. 1970). Here, both necessity and trustworthiness were lacking. Plaintiff's counsel, although understandably eager to bring to the jury's attention the two reports that contradicted Walters, could have done so without resorting to hearsay and thereby shielding Lambert and Wiseman from cross-examination. These experts could have been called by Bryan's attorney to contradict and thus impeach Walter's testimony[5] and additionally to bring the substance of the reports to the jury. Although Federal Rule of Evidence 607, permitting impeachment of one's own witness, was not yet in effect, plaintiff would have been protected from damage by Lambert and Wiseman, had they deviated from their reports, by the accepted practice of impeachment by prior inconsistent statements. See generally Graham, Examination of a Party's Own Witness Under the Federal Rules of Evidence: A Promise Unfulfilled, 54 Texas L.Rev. 917 (1976). Thus, both the interest of plaintiff in bringing in the evidence and of defendants in cross-examination would have been protected.
 
 
 10
 Most importantly, however, the excerpts proffered by plaintiff's counsel from the Lambert and Wiseman reports lacked any independent guarantee of trustworthiness that would justify dispensing with cross-examination. When courts have permitted disclosure of hearsay underlying an expert's opinion that result has comported with the concerns of the hearsay rule because some external circumstance guaranteed the reliability of the evidence. Sometimes the evidence can be relied upon because it constitutes a routine and customary record of a business concern, see Long, supra, or because an uninterested, expert third party prepared the report, see Challoner v. Day & Zimmermann, Inc., 512 F.2d 77 (CA5), vacated on other grounds, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975), or because experts particularly doctors customarily rely upon third party reports from other experts such as pathologists and radiologists in whom the testifying expert places his trust. Cf. Box v. Swindle, 306 F.2d 882 (CA5, 1962); Fed.R.Evid. 703 & Advisory Committee Note. Here, no such extraneous indicia of reliability exist.
 
 
 11
 Moreover, to admit the hearsay opinion of an expert not subject to cross-examination goes against the natural reticence of courts to permit expert opinion unless the expert has been qualified before the jury to render an opinion. See generally Fed.R.Evid. 702. The Lambert and Wiseman opinions were brought before the jury without qualifying the experts who rendered them. The jury had no way of determining whether the opinions were credible or worthy of belief. Therefore, because the excerpts containing the opinions of Lambert and Wiseman lacked independent trustworthiness and no element of necessity made it incumbent to admit them in hearsay form, the trial judge erred in admitting them under rule 705.
 
 
 12
 Often evidence inadmissible for some other purpose may be admissible as impeachment evidence. Here, however, under the guise of impeachment, plaintiff's counsel was permitted to argue substantively evidence that did not impeach the testifying expert. In Box v. Swindle, supra, this circuit held that reports of others examined by a testifying expert and conflicting with the testimony of the expert could not be admitted even as impeachment evidence unless the testifying expert based his opinion on the opinion in the examined report or testified directly from the report. In this case Walters did not admit that he relied on the conclusions reached by Lambert and Wiseman nor was Walters testifying solely from the Lambert and Wiseman reports. Rather, Walters admitted that he used statistical evidence on yield strength and other empirical data contained in the reports and employed these figures to reach his own conclusions. The statistics from the reports and Walter's reliance upon them were properly brought out under rule 705. The conclusions reached by the other experts did not impeach Walter's use of the statistics. The fact that other experts reached a different conclusion goes to the weight of Walter's conclusions. Since Walter's testimony could only be undercut by arguing the substantive correctness of the other experts' conclusions, this evidence should have been brought out, if at all, on direct examination of the reporting experts. As it occurred at trial, however, the nonimpeaching evidence was argued substantively, violating the hearsay rule, without permitting cross-examination to the defendants.
 
 
 13
 We hold only that, under the circumstances of this case, the conclusions of nontestifying experts were inadmissible under rule 705 either as the facts and data on which the testifying expert based his opinion or as impeachment evidence. The cases cited above admitted otherwise hearsay evidence under special circumstances with external guarantees of reliability and strong limiting instructions to prohibit the jury from considering the evidence substantively.[6] Here, however, the purposes of the hearsay rule would suffer if the evidence were admitted.
 
 II. Design defect
 
 14
 The jury's special finding that a defect in design existed is sufficiently supported by evidence of inadequate specifications furnished by Bean to Midland-Ross, leading to a product too hard and brittle, characteristics that contributed to propagation of a crack in the metal.
 
 
 15
 Bean furnished Midland-Ross a pattern and specification blueprint for manufacturing clevises. The jury had sufficient evidence to find that Bean did not establish any specifications for the hardness of the metal, but only for yield strength, and that the metal actually used in the clevis which broke was too hard.
 
 
 16
 Plaintiff's expert Anderson testified that if the Brinell hardness of the clevis had been lower the manufacturing defects he found might not have resulted in the breaking of the clevis, and that the manufacturing specifications were not "tight enough . . . on this part to insure that it be produced to a degree of soundness that would be required of a part of this type." There was no dispute that a crack occurred in the clevis, merely a dispute as to its effect. Anderson's testimony set out a design defect significant enough to constitute a producing cause of the accident whether the crack was or was not a manufacturing defect:
 
 
 17
 We felt that the particularly high hardness of the part, coupled with this inherent defectiveness allowed the crack to propagate in a brittle manner with ease once it was started. And had the material been softer and tougher maybe even with a crack there, the propagation or movement of this crack . . . may have stopped and may have not progressed the fracture.
 
 
 18
 The opinions of Lambert and Wiseman, erroneously introduced, concerned allegedly excessive levels of occlusions and other defects in the metal. Neither addressed the question of Brinell hardness or design specifications. Thus the erroneous admission of their opinions does not affect the design defect issue.
 
 
 19
 Our conclusion concerning insufficient specifications makes it unnecessary to consider other alleged design defects.[7]
 
 
 20
 The jury verdict in favor of plaintiff and against Bean must be sustained.[8]
 
 III. Bean's contention on misuse by others
 
 21
 Bean alleges that the trial court erred in refusing an instruction that misuse by persons other than the plaintiff could defeat Bryan's recovery. Although Bean correctly cites Helene Curtis Industries, Inc. v. Pruitt, 385 F.2d 841 (CA5, 1967), cert. denied, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968), for the proposition that a third party's misuse that causes the plaintiff's injury will bar recovery in strict liability, that case does not require reversal here. In Helene Curtis a third party misused the product in a manner injurious to the plaintiff. The decision held that the third party's misuse of the product, rather than a product defect, caused the plaintiff's injury. Bean's contention is different. Bean does not contend that a third party's active misuse brought about the accident. Rather, Bean argues that prior misuse and mishandling by employees of the company had made the clevis fragile and likely to break. Bean's fear that others had misused and deformed the clevis prior to Bryan's injury was adequately allayed by the trial judge's explicit instruction that Bean did not incur liability unless the product reached Bryan in a condition substantially unchanged from its condition when Bean placed it in the streams of commerce. Under the instructions given by the trial judge, to return a general verdict against Bean the jury had to find the clevis substantially unchanged by usage prior to Bryan's accident. Therefore, the jury must have considered and rejected the evidence of prior misuse and wear and tear. The court committed no reversible error in failing to grant Bean's requested instruction.
 
 IV. Midland-Ross' contentions as to Bryan
 
 22
 Midland-Ross complains that the special interrogatories used to adjust liability between it and Bean were inadequate. First, Midland-Ross argues that the interrogatories did not require the jury to find that the manufacturing defect created by Midland-Ross rendered the clevis unreasonably dangerous apart from the unreasonable danger created by the design defect. Midland-Ross contends that without a separate finding of unreasonable danger, caused by the manufacturing defect, the case for strict liability was not proved against it. Second, Midland-Ross contends that the interrogatories should have required the jury to make a separate finding that Bryan did not misuse the clevis in a manner unforeseeable to Midland-Ross. Midland-Ross seems to construe foreseeability as a duty concept and argues that it, by virtue of being further removed from the user, could foresee a narrower range of misuse than a manufacturer in Bean's position.
 
 
 23
 Whatever the merit of these contentions had Midland-Ross been sued directly by Bryan, they do not convince us that error has been committed in this case. Bryan sued only Bean, which impleaded Midland-Ross. The judge properly required the jury to reach a general verdict against Bean before considering the liability of Midland-Ross. Under Texas products liability law, Bean, as both designer and distributor of the clevis, would be liable for both design defects and manufacturing defects. See, e. g., McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.1967). The judge instructed the jury that liability of Bean could be predicated on either or both a manufacturing defect or a design defect. The special interrogatories tell us that included in the jury's general verdict against Bean is a finding that both types of defects existed and both rendered the product unreasonably dangerous. Moreover, any complaint that Midland-Ross may have on this issue relates only to its liability to Bean and can thus be remedied in the retrial that we have ordered on other issues.
 
 
 24
 Midland-Ross cites no authority for its proposition that different entities in the marketing chain have differing abilities to foresee misuse. As Texas products liability law has developed, misuse bars recovery in strict liability if the misuse was unforeseeable by the manufacturer and constituted a proximate cause of the accident. General Motors Corp. v. Hopkins, 548 S.W.2d 344 (Tex.1977).[9] Texas law is silent, however, on how the misuse defense might operate when the primary marketer sues the manufacturer.
 
 
 25
 We decline to interpret Texas law as Midland-Ross urges us to do. In our review of Texas products liability law we note that the unforeseeable misuse defense has developed in cases alleging design defect rather than manufacturing defect. See, e. g., General Motors Corp. v. Hopkins, supra; Henderson v. Ford Motor Co., 519 S.W.2d 87 (Tex.1974). We question whether the misuse defense has as wide a scope in cases of manufacturing defect, which, by definition, present a flaw in the product not intended to occur. In these circumstances, misuse relates only to causation of the accident rather than tending to prove the absence of a defect in the product as manufactured. See General Motors Corp. v. Hopkins, supra. The jury's general verdict, especially as illuminated by the special interrogatories, leaves little doubt that the jury was satisfied that the manufacturing defect constituted a producing cause of the accident. Therefore, any misuse was considered by the jury, but the jury found that defects, rather than misuse, caused the accident.
 
 
 26
 The Hopkins case, decided after this trial, permits misuse to be considered not only as bearing on defect and causation-in-fact, as above, but also as an affirmative defense. On remand, the Texas district judge may conclude, after reviewing Hopkins and Texas principles of contribution and indemnity, that Midland-Ross can attempt to reduce its potential liability to Bean by arguing that misuse unforeseeable by Midland-Ross proximately caused Bryan's injuries. Both because we order a new trial and because Midland-Ross' contention represents at least an extension of Texas tort law, we leave that issue for trial on remand.
 
 V. Evidentiary issues
 
 27
 Defendants attempted to introduce several documents tending to prove that plaintiff's back injuries arose from causes other than the accident in suit. Objections were sustained to all. We find no reversible error.
 
 Plaintiff's original complaint alleged:
 
 28
 The Plaintiff alleges that prior to the accident in question, he was an able bodied, healthy, American male of the age of 28 years with a reasonable life expectancy of 43.08 years. As a result of the injuries sustained in the accident proximately caused by the Defendant, the Plaintiff, Dyrell Glenn Bryan, has lost his left eye, has suffered excruciating pain, both physical and mental, has been totally and permanently physically impaired, and caused to suffer grave and serious mental anguish in the past, and will, in all reasonable medical probability, continue to suffer the physical impairment, the physical pain, and suffer mental anguish for the remainder of his life. Plaintiff would show the Court and Jury that the sum of $250,000.00 would reasonably compensate him for the physical pain, physical impairment, and mental anguish that he has suffered in the past, and can in all reasonable probability expect to suffer in the future.
 
 
 29
 This is not an admission against interest with respect to the back, and it is inconsistent with the back claim only in the arguable sense that eye injury is specifically mentioned and back injury is not. See Hartford Acc. & Indemnity Co. v. McCardell, 369 S.W.2d 331 (Tex.1963); Doss v. Apache Powder Co., 430 F.2d 1317 (CA5, 1970); Dallas R. R. & Terminal Co. v. Hendricks, 140 Tex. 93, 166 S.W.2d 116 (Tex.Com.App.1942); McCormick v. Stowe Labor Co., 356 S.W.2d 450 (Tex.Civ.App. Austin 1962) writ ref. n. r. e.; 24 Tex.Jur.2d "Evidence," § 631.
 
 
 30
 Plaintiff brought out in his direct case that he had suffered a back injury in February 1966 and introduced medical records concerning this. In limine defendants tendered a workmen's compensation claim filed for plaintiff by an attorney in April 1966 alleging total and permanent disability of the back from the February 1966 accident. The district judge sustained objection because he wished to prevent the issue of insurance from reaching the jury. See A. O. Joyner v. Berman Leasing Co., 398 F.2d 875 (CA5, 1968). In 1966 plaintiff had worked for a different employer, and nothing tended to indicate that 1966 workmen's compensation insurance had any relation to the claim in suit. Rather the claim was tendered to show a prior back injury on the basis of which total disability had been claimed. We think this prior pleading in another case probably was admissible for such purpose, Hartford Acc. & Indemnity Co. v. McCardell, supra, but the court's ruling was not reversible error. The trial judge instructed counsel they could go into the previous injury and the date of it and its relationship to the injuries claimed in the present case. He told them they could impeach plaintiff, and he then would take up outside the presence of the jury the manner and method of impeachment, and that the facts and circumstances of the 1966 injury might be brought out, including whether the injury was light or serious, without bringing out that it was the subject of a compensation claim and how much it was settled for. The defense pursued the matter only briefly on cross-examination. Plaintiff stated he was released by his employer after being off a week from the 1966 injury and was off from work only about 30 days. The defense made no further effort to impeach plaintiff. If error, the court's ruling was not reversible.
 
 
 31
 Finally, the court excluded a recorded statement given by plaintiff to an insurance adjuster concerning a back injury plaintiff suffered in June 1973, requiring an operation on his back and the payment of substantial workmen's compensation benefits. The court sustained objection on the ground, among others, that the recording (actually a re-recording on a different type of equipment) was inaudible. This was not error.[10]VI. Other assignments of error
 
 
 32
 The damages awarded in this case are substantial. We have considered the assertions that they are excessive in the context of the serious injuries to a 28-year-old man loss of an eye, excruciating pain, back injuries that the jury could relate at least in part to this accident, vertigo, inability to drive an automobile, difficulty in remembering, inability to work after the back operation and other consequences and the fact that excessiveness and remittitur were presented to the trial judge on motion for new trial and were denied. See Gorsalitz v. Olin Mathieson Chemical Corp., 429 F.2d 1033 (CA5, 1970), cert. denied, 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972). We find no reversible error.
 
 
 33
 There was a brief flurry concerning inflation as an element of damages. Responding to Bean's argument that plaintiff's income was greater after his accident than before, plaintiff's counsel in rebuttal closing argument mentioned the factor of inflation:
 
 
 34
 Mr. Gunter said, "Yes, he was making more when he came back. Because, as you know, inflation had gone up and he didn't have to work as much. And this is something you consider in damages "
 
 
 35
 At this point both defendants objected, and the court responded as follows:
 
 
 36
 THE COURT: Members of the jury, the charge of the Court will take care of this situation. It's the amount of money paid in cash now, amount of money paid in cash now that controls . . .
 
 
 37
 . . . Objection is otherwise overruled.
 
 
 38
 No other reference to inflation was made. There had been no evidence concerning inflation or the projected rate. The court's charge made no reference to it, saying merely that the jury could consider certain enumerated elements of damages, "and no others," and that compensatory damages set should be a "sum of money paid now in cash." We think that the immediate instruction by the court that it would "take care" of the matter plus the charge to only consider enumerated elements of damages, were sufficient.[11]
 
 
 39
 There is no merit to the issue of the content of a hypothetical question asked a medical witness, to Bean's assertion that it was given too little time for oral argument, and to its plea that it should have been permitted to interview members of the jury after the trial.
 
 
 40
 AFFIRMED in part, and REVERSED and REMANDED in part.
 
 
 
 *
 Senior District Judge of the Eastern District of Virginia, sitting by designation
 
 
 [1]
 "1. Do you find from a preponderance of evidence that the clevis which broke was defectively designed?
 Answer YES or NO Yes
 If so, was the defective design a producing cause of the accident?
 Answer YES or NO Yes
 
 
 [2]
 Do you find from a preponderance of the evidence that John Bean's failure to warn plaintiff that an improper use of the clevis would create an unreasonable risk of danger?
 Answer YES or NO Yes
 If so, was the failure to warn a producing cause of the accident?
 Answer YES or NO No
 
 
 [3]
 Do you find from a preponderance of evidence that the clevis which broke was manufactured by the Midland-Ross Corporation?
 Answer YES or NO Yes
 
 
 [4]
 Do you find from a preponderance of evidence that the clevis which broke was defectively manufactured?
 Answer YES or NO Yes
 If so, was the defective manufacturing a producing cause of the accident?
 Answer YES or NO Yes "
 
 
 [2]
 The Brinell number of a piece of metal is calculated by applying pressure to a hardened steel ball which is pressed against the piece of metal tested and makes an indentation. The diameter of the indentation is measured and mathematically converted to a "Brinell hardness number."
 The specifications required the clevises allegedly manufactured by Midland-Ross to have a maximum Brinell hardness of 241. Anderson testified that the clevis involved in the accident measured 387 on the Brinell scale. This elevated measurement indicated that the clevis was far more brittle than the specifications required.
 
 
 [3]
 This error does not, however, require reversal of plaintiff's verdict against Bean, because the general verdict is sustained on the separate basis of defect in design. As designer and distributor, Bean was liable for both defects in design and defects in manufacture, and the special interrogatories demonstrate that the jury based the general verdict on both defects in design and manufacture
 
 
 [4]
 Rule 705 "Disclosure of Facts or Data Underlying Expert Opinion," provides: "The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."
 Bean and Midland-Ross contend that because the Federal Rules were not yet in effect at the time of trial, rule 705, should not apply. Section 1 of Pub.L. 93-595, Jan. 2, 1975, 88 Stat. 1926 provided: "These rules apply to actions, cases, and proceedings brought after the rules take effect. These rules also apply to further procedure in actions, cases, and proceedings then pending, except to the extent that application of the rules would not be feasible, or would work injustice, in which event former evidentiary principles apply." Although the Tenth Circuit declined to apply the new rules to a case tried before the effective date, United Telecomm. v. American Tel. & Comm. Corp., 536 F.2d 1310 (CA10, 1976), we decline to follow that case for two reasons. First, the application of rule 705 to this case does not mark so great a departure from prior law that injustice would result. Second, if we were to require a new trial, it would be conducted under the Federal Rules. We therefore consider it appropriate to consider the question before us in terms of rule 705.
 
 
 [5]
 See C. McCormick, Handbook on the Law of Evidence § 33 (2d ed. 1972)
 
 
 [6]
 The district court's instruction here exacerbated the error of permitting plaintiff's counsel to argue the Lambert and Wiseman opinions substantively
 "THE COURT: It (the conclusions of other experts) is not introduced for the truth of it members of the jury. It is merely an opinion expressed by another expert that this expert considered when he expressed his opinion. In the end, as I am going to tell you, and I am going to let you judge what value you are going to give to the opinions of these experts which in the most part are based upon hearsay, as you can obviously tell and you will get a full charge on how to evaluate opinions of experts. What Mr. Green read you does not establish there was negligence. It does not establish the truth of what that expert says. That's just a basis for this witness giving his opinion and that is the basis on which the Court let it in. It is for you to evaluate what probative effect, that is, what weight you think it has as real, sure enough evidence. That is for you to determine in the end, and as I am going to charge you later, you can disregard the opinion of all experts if you want to. That is your prerogative. That is just opinion evidence and that is the way I am going to charge you, fully, and you wait till the case gets to that stage. Then you remember all these experts that have testified and I will be telling you specifically how to evaluate their opinions, including the charts, exhibits, summaries, all that sort of thing that has been shown to you here in the course of the trial. They don't prove anything. It is just the supporting (sic) that they use to tell you what they mean and it is for you to determine what the facts are, and these opinions are not admitted by the Court as proof. You understand that? If you accept and buy it as proof, that is something else, but I am going to tell you at the same time that what it is, that you don't have to consider it at all if you don't want to, if it offends your sense of realism or truth of what the facts are as established by other circumstances that's been introduced in evidence. You make up your minds. That's what you are here for you are the judges of the facts."
 
 
 [7]
 (1) Evidence that a pin should have been passed through the open legs of the clevis with a cotter pin through it, so that if the clevis broke it would not fly apart; (2) evidence that "spacers" should have been provided which would have forced any user to center the clevis properly on the axle
 
 
 [8]
 In upholding the verdict for plaintiff against Bean but requiring a new trial between Bean and Midland-Ross, we distinguish cases that strike down a general verdict because one of several possible theories to support the verdict was improperly submitted to the jury. See, e. g., Smith v. Southern Airways, Inc., 556 F.2d 1347 (CA5, 1977). As Chief Judge Brown lucidly illustrates in his article Federal Special Verdicts: The Doubt Eliminator, 44 F.R.D. 338 (1968), special verdicts eliminate the opacity of the general verdict and clearly disclose the bases of the jury's verdict. See id. at 345, particularly commending the practice in products liability cases and multi-party suits
 The jury's answers to the special interrogatories demonstrate that the general verdict against Bean was based on a finding of both design defect and manufacturing defect. Because Bean was liable to plaintiff for both types of defect, the finding of design defect alone supports the verdict against Bean.
 
 
 [9]
 The district court's instruction on misuse was consistent with Hopkins although this case was tried in 1975 and Hopkins was decided in 1977
 
 
 [10]
 Also, a stipulation was later read to the jury of facts set out in a statement signed by plaintiff and relating to the June 1973 accident, in which he said that he sprained his back while handling truck tires and also mentioned the accident here in question and described his injuries in terms of his eye and facial cuts (and did not refer to back injury)
 
 
 [11]
 Texas law allows inflation to be considered as an element of damages. Weakley v. Fischbach & Moore, 515 F.2d 1260 (CA5, 1975). We pretermit application of that rule because of the argument between the parties over whether evidence must be introduced concerning the rate of inflation