643 P.2d 1017

Betty J. FERGUSON, on her own behalf and on behalf of Marjorie Ferguson Lunday, Evelyn Ferguson Mason, James Ferguson and Larry Ferguson, Plaintiff/Appellee/Cross Appellant,

and

Ginette Bauchet Frazier, on her own behalf and on behalf of Darrell Hall Frazier, Shirley Frazier Bingham and David Thomas Frazier, Plaintiff/Appellee/Cross Appellant,

v.

CESSNA AIRCRAFT COMPANY, a foreign corporation, Defendant/Appellant/Cross Appellee.

No. 2 CA–CIV 3955.

Court of Appeals of Arizona, Division 2.

Oct. 14, 1981.

Rehearings Denied Nov. 25, 1981.

Review Granted Jan. 6, 1982.

48

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by John F. Molloy, Tucson, for plaintiff/appellee/cross appellant Ferguson.

Davis, Siegel & Gugino by Stuart J. Siegel, Tucson, and Martzell, Montero & LaMothe by Frank E. LaMothe III, New Orleans, La., for plaintiff/appellee/cross appellant Frazier.

Lesher, Kimble & Rucker, P. C. by Robert O. Lesher, Tucson, for defendant/appellant/cross appellee.

OPINION

HOWARD, Judge.

This is a products liability case involving an airplane crash. Appealing from an adverse jury verdict, Cessna Aircraft Company (Cessna) contends that there was no proof that its product, a 210L "Centurion" was dangerously defective or that the defect caused the accident. It also contends the trial court erred in refusing to grant a new trial because the court (1) did not let Cessna use the "Paris Report" in its cross-examination of Mr. McKinley, appellees' expert witness; (2) refused Cessna's Jury Instructions Nos. 1, 2 and 3 and (3) allowed Mr. McKinley to testify in rebuttal. Appellees have cross-appealed, contending the trial court erred in refusing to instruct the jury on punitive damages. We disagree and affirm.

The facts considered in the light most favorable to upholding the jury verdict are as follows. Kenneth Ferguson, Hal Frazier and a third person were riding in a Cessna Centurion over the Caribbean Island of Martinique when the left wing came off, causing the aircraft to plummet to the earth, killing all aboard. At the time of the accident, the weather was essentially clear with light winds.

Mr. McKinley, appellees' main expert witness, testified that the ailerons (control surfaces located on the wings) were defectively designed because they were not statically mass balanced, thus allowing a "flutter" to occur when the cable which controlled them became loose. He believed that the most probable cause of the accident was a loose aileron cable which caused the destructive aileron-wing flutter. His opinion was supported by his inspection of the crash site and the debris, his knowledge of other airplane crashes, and a "flutter" analysis done by Cessna prior to the accident which indicated that a loose cable could create destructive wing flutter. Mr. McKinley believed that if the ailerons were properly balanced, as in aircraft manufactured by others, the flutter would not have occurred.

## EVIDENCE OF DANGEROUS DEFECT

Cessna argues that there was no competent evidence of a dangerous defect which caused the accident because (1) there was no evidence of negligence on Cessna's part, (2) the aircraft had been certified to be airworthy by the Federal Aviation Agency and (3) if the accident were due to a loose aileron cable, the company which performed the annual maintenance on the aircraft was responsible for the looseness of the cable and for the crash. Cessna has also made an argument relative to the worth of McKinley's testimony. This is a jury argument which we summarily reject.

■ The other arguments can also be easily answered. Appellees' evidence showed that the airplane failed to perform as safely as an ordinary consumer would expect when using it in an intended or reasonably foreseeable manner. This type of design defect is based on strict liability under the Restatement (Second) Torts, § 402A and not on negligence. *Moorer v. Clayton Manufacturing Corporation*, 128 Ariz. 565, 627 P.2d 716 (App.1981). Therefore, it was not necessary for appellees to show that Cessna was negligent.

■ The fact that the design of the Centurion was specifically approved by the Federal Aviation Administration (FAA), while admissible evidence, does not provide a complete defense to a charge of design defect. *Wilson v. Piper Aircraft Corporation*, 282 Or. 61, 577 P.2d 1322 (1978); and see Annot., 97 A.L.R.3d 627, 638 through 641.

■ We do not agree with Cessna's contention that the negligence of the aircraft maintenance company relieves it of liability. Product defectiveness can be a proximate cause concurrently and in combination with other causes. *Moorer v. Clayton*, supra.

## CROSS–EXAMINATION USING INADMISSIBLE REPORT

The so-called "Paris Report" is a 15 page document which purports to be an English translation of a report made by the "French Civil Aviation Authority" concerning this accident. It is supposedly required by French law, but no certified copy was available since under French law the report cannot be copied, let alone authenticated. Furthermore, the report cannot be used in France in connection with civil litigation.

Our examination of the report reveals that it is, for all intents and purposes, an accident report. It is purportedly signed by "J. Conchard," who is designated as an "investigator." The report contains factual data, but also includes the conclusions and opinions of Mr. Conchard, not only on such things as the weather, but as to how the accident happened and what caused it. Cessna sought to get the opinions and conclusions of Mr. Conchard before the jury through the cross-examination of Mr. McKinley using this report. The trial court refused to allow such cross-examination. Contrary to Cessna's contention, the trial court did not err in this respect.

■ Rule 803(8)(C) of the Arizona Rules of Evidence authorizes the admission into evidence of factual findings contained in an investigation made pursuant to authority granted by law. Opinions and conclusions of the investigator are not admissible. Cessna, however, contends Mr. McKinley's use of the report in arriving at his conclusions, mandates its use to cross-examine him. We do not agree. Although Mr. McKinley used some of the report's factual data to arrive at his conclusions, he specifically testified he did not use any of the opinions or conclusions which it contained. While rules 703 and 705 of the Arizona Rules of Evidence permit the disclosure of otherwise hearsay evidence to illustrate the basis of the expert witness' opinion, they do not permit the unrelied upon opinions and conclusions of others to be introduced in cross-examination for impeachment purposes. See *Bryan v. John Bean Division of FMC Corporation*, 566 F.2d 541 (5th Cir. 1978).

## JURY INSTRUCTIONS

■ Based upon the case of *Rogers v. Unimac Company, Inc.*, 115 Ariz. 304, 565

P.2d 181 (1977), Cessna offered its instructions 1 and 2 which were rejected by the trial court. These instructions are as follows:

"DEFENDANT CESSNA'S REQUESTED INSTRUCTION NO. ONE

The law of Arizona provides, and I instruct you, that the manufacturer of an aircraft cannot be liable for a condition of its product which arises because of lack of normal repair. I instruct you, therefore, if you find that a condition of the aircraft involved in this case caused or proximately contributed to the accident, and if you further find that that condition existed because the aircraft was not maintained in a condition of normal repair, then you shall find on that issue for the defendant, Cessna Aircraft Company.

DEFENDANT CESSNA'S REQUESTED INSTRUCTION NO. TWO

I instruct you that under the law of Arizona the manufacturer of an aircraft is not liable to a person claimed to be harmed by a condition of that aircraft because of the manufacturer's failure to warn of those dangers which may arise because of lack of normal repair and maintenance of the aircraft."

Appellant contends that the trial court's failure to give these instructions constituted reversible error. We do not agree. In the case of *Rogers v. Unimac*, supra, there was no evidence of a design defect. Here there was. Since we have already stated that product defectiveness can be a proximate cause concurrently and in combination with other causes, the trial court did not err in refusing to give the instructions.

The third instruction offered by Cessna and rejected by the trial court tells the jury that it can only find Cessna liable if Cessna were guilty of the failure to exercise reasonable care. For reasons previously stated, this instruction had no application in this case.

## REBUTTAL TESTIMONY

After Cessna's expert witnesses had testified and left town, appellees recalled Mr. McKinley to the witness stand for rebuttal. Cessna contends that this was improper. The trial court's decision to allow or disallow rebuttal evidence will not be disturbed unless manifest abuse has prejudiced the complaining party. *Jansen v. Lichwa*, 13 Ariz.App. 168, 474 P.2d 1020 (1970). We have examined Mr. McKinley's testimony and conclude that it was proper rebuttal. The trial court did not err in allowing him to testify.

## PUNITIVE DAMAGES

As far as the cross-appeal is concerned, we do not believe that the trial court erred in refusing to submit the issue of punitive damages to the jury. Such damages are not permitted in Arizona absent a showing of reckless or wanton disregard of others. *Hall v. Motorists Insurance Corporation*, 109 Ariz. 334, 509 P.2d 604 (1973).

Cross-appellants contend that there was reckless conduct when Cessna's executive engineer, William Moody, issued an airworthiness certificate in 1973[1] for the airplane which crashed, knowing that it did not meet current federal airworthiness regulations relative to the mass balancing of the ailerons and gust-load factors. We do not agree. There are two different kinds of aircraft certification. Type certification is the FAA approval of the aircraft. See 14 C.F.R. § 21.21 (1973). This certification lasts until it has been terminated, surrendered, suspended or revoked. 14 C.F.R. § 21.51 (1973). An airworthiness certificate is issued if the individual aircraft conforms to the type design. 14 C.F.R. § 21.273 (1973).

If the FAA finds that the design of a previously type-certified aircraft is dangerous, it will issue an airworthiness directive requiring a design change. See 14 C.F.R. § 21.99 (1973). There is no requirement,

---

1. This certificate was pursuant to a delegation authorized for certain manufacturers of air-

craft. See 14 C.F.R. § 21.231–21.239 (1973).

however, that a previously approved type design be changed in order to comply with new airworthiness regulations before an airworthiness certificate can issue. Because in this case there was never a design change directive, we find that Cessna did not wantonly disregard applicable FAA regulations.

While Cessna's own flutter analysis showed that destructive flutter could result from improper cable tension, its maintenance manual cautioned that proper cable tension was a necessity. Furthermore, there was no evidence of any other crashes of this Cessna model due to improper cable tension. In short, we are unable to find in the record any evidence which would support the submission of the issue of punitive damages to the jury.

Affirmed.

HATHAWAY, C. J., and BIRDSALL, J., concur.