[No. 52575-7. En Banc. September 11, 1986.]

WASHINGTON IRRIGATION AND DEVELOPMENT COMPANY, ET AL, *Respondents*, v. ELBRIDGE SHERMAN, *Appellant*.

*Small, Winther, Snell, Logue & Weiss, P.S.*, by *Gregory F. Logue*, for appellant.

*Kenneth O. Eikenberry, Attorney General*, and *William A. Garling, Assistant*, for respondents.

GOODLOE, J.—This case involves alleged evidentiary and instructional errors in the trial court review of a Board of Industrial Insurance Appeals decision. We find error occurred and reverse.

Appellant Elbridge Sherman suffered an industrial injury to his lower back on September 8, 1972, while in the course of his employment for Washington Irrigation and Development Company. Sherman filed an accident report with the Department of Labor and Industries. The Department issued an order on November 22, 1977, closing the claim with a permanent partial disability award equal to 20 percent as compared to total bodily impairment. Sherman appealed to the Board of Industrial Insurance Appeals and then to the Thurston County Superior Court. A jury entered a judgment in favor of Sherman, increasing his permanent partial disability award to 50 percent as compared to total bodily impairment.

On October 28, 1980, Sherman filed an application to reopen his claim with the Department on the grounds that his condition had worsened. The Department denied the application. Sherman appealed this denial to the Board. After hearings, the Board issued a decision and order finding that between November 22, 1977, and March 20, 1981, Sherman's condition became aggravated and that Sherman was permanently and totally disabled within the meaning

of the Industrial Insurance Act.

Respondents Washington Irrigation and the Department appealed the Board's decision to the Thurston County Superior Court where the testimony presented to the Board was read to a jury. The jury returned a verdict in favor of the respondents which reversed the Board's decision that Sherman was totally and permanently disabled. Sherman filed a motion for a new trial which was denied. Sherman then filed an appeal with the Court of Appeals, Division Two, which transferred the case to this court pursuant to RAP 4.3.

The first issue is whether the trial court erred by allowing the Department during cross examination of one of Sherman's medical witnesses to introduce conclusions of medical reports when the medical reports were never admitted into evidence and had been authored by nontestifying witnesses.

The Department during cross examination and over Sherman's timely hearsay objection was allowed to ask Dr. Bridgeford, a medical expert for Sherman, the following question:

> And you were provided . . . with some *doctors' reports . . . which noted degenerative changes in the articular facets at L5—S1, would have occurred prior to the industrial injury* of September 8, 1972?

(Italics ours.) Certified Appeal Board Record (CABR), at 83–84. Dr. Bridgeford replied, "Yes." CABR, at 84. The doctors' reports referred to in the Department's question were never offered into evidence and included medical conclusions of nontestifying physicians.

Sherman contends the trial court erred by allowing the Department to present these medical conclusions to the jury. We agree with Sherman that this interrogation was hearsay which improperly put before the jury both a diagnosis of Sherman's condition and an inference that his condition was not causally related to the industrial injury.

ER 801(c) provides:

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

ER 802 renders hearsay inadmissible unless it falls within certain exceptions. Sherman characterizes the medical conclusions contained within the Department's question as hearsay because the conclusions (1) were extrajudicial statements made by nontestifying doctors and (2) were offered to prove the truth of the matter asserted, that is, to prove that Sherman's condition resulted from degenerative changes occurring prior to his 1972 accident.

Respondents argue that the cross examination was properly admitted on the basis of ER 703 and ER 705, two exceptions to the hearsay rule. We do not agree. ER 703 permits an expert to express an opinion based upon facts or data that are not themselves admissible into evidence when those facts or data are of a type reasonably relied upon by experts in that field. ER 705 provides that an expert who offers an opinion may be required to disclose the underlying facts or data upon which that opinion is based during cross examination. The record fails to indicate that Dr. Bridgeford relied upon the conclusions of the nontestifying doctors to formulate his opinion. Consequently, the conclusions were improperly admitted into evidence.

Other jurisdictions have reached the same result. In *Ferguson v. Cessna Aircraft Co.*, 132 Ariz. 47, 49, 643 P.2d 1017 (Ct. App. 1981), the court stated that while Arizona Rules of Evidence 703 and 705, which are identical to ours, "permit the disclosure of otherwise hearsay evidence to illustrate the basis of the expert witness' opinion, *they do not permit the unrelied upon opinions and conclusions of others to be introduced in cross-examination for impeachment purposes.*" (Italics ours.)

In *Bobb v. Modern Prods., Inc.*, 648 F.2d 1051, 1055 (5th Cir. 1981), the court found reversible error occurred when defense counsel "used statements from a report not in evidence to attempt to impeach the plaintiff's [expert] witness." The court explained:

Plaintiff's witness did not state that he had relied on the report, even though he had admitted that he had seen it. Until defendant established that plaintiff had relied on the report of the other doctor, it was improper for the defendant to read from that report in cross–examining plaintiff's witness.

*Bobb,* at 1056. The court would not permit "cross–examination which attempts to impeach by slipping hearsay evidence into the trial". *Bobb,* at 1055. The respondents in this case failed to establish that Sherman's expert relied upon the reports of the nontestifying doctors, although Dr. Bridgeford did admit that he had seen them.

In *Bryan v. John Bean Div. of FMC Corp.,* 566 F.2d 541 (5th Cir. 1978), an expert witness offered an opinion on the cause of the fracturing of a metal device. His opinion was partially based on factual data contained in a report prepared by nontestifying metallurgists. The hearsay report was not admitted into evidence, but on cross examination counsel made maximum use of the nontestifying metallurgists' opinions contained in the report by paraphrasing them, quoting them and questioning the expert regarding them. The court found reversible error:

Plaintiff's counsel, although understandably eager to bring to the jury's attention the two reports that contradicted [the defense expert], could have done so without resorting to hearsay and thereby shielding [the nontestifying experts] from cross–examination. These experts could have been called by [plaintiff's] attorney to contradict and thus impeach [the defense expert's] testimony and additionally to bring the substance of the reports to the jury.

(Footnote omitted.) *Bryan,* at 545–46. Here, if the respondents wished to impeach Sherman's expert or introduce additional medical testimony by using the reports of nontestifying physicians, they should have done so by calling these physicians as witnesses. By doing this, the use of hearsay could have been avoided and the nontestifying physicians could have been cross–examined. We agree with *Ferguson, Bobb,* and *Bryan* that unrelied upon opinions

and conclusions should not be introduced in cross examination.

Error at trial is not reversible unless it is prejudicial. *Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983). Since the central issues in the case dealt with the cause and extent of the worsening of Sherman's condition, we find that the trial court's decision allowing respondents to introduce as evidence the hearsay conclusions of nontestifying experts was prejudicial and therefore constitutes reversible error.

The second issue is whether the trial court erred when it admitted a letter from Sherman's attorney to Sherman into evidence.

Sherman contends that the trial court should not have admitted a letter written to him by his attorney. Sherman had apparently given the letter to one of his doctors whereby it became part of the physician's file. The letter, dated April 30, 1979, was written before Sherman prevailed at his first trial where his permanent disability award was increased from 20 percent to 50 percent. In the letter Sherman's lawyer makes suggestions regarding an application to reopen Sherman's industrial insurance claim on the basis of an aggravated condition. It reads, in part:

> I think what would be best at this time until we know the outcome of the Superior Court trial would be to have you take this application to reopen form to Dr. Monk. . . . Have Dr. Monk give you at least a short examination . . . Also have him check the necessary questions and . . . then have him return to us in the enclosed envelope. I then will make a copy of it and send it to the Department for their action.

Exhibit 1.

Sherman argues that the letter was irrelevant in that it had no propensity for establishing the existence of any fact of consequence to the proceeding. *See* ER 401. We agree. Irrelevant evidence is inadmissible. ER 402. By introducing the letter, the trial court invited the jury to speculate about Sherman's motives, although the letter contains no evi-

dence that is probative on this question. The letter merely contains the independent professional judgment of Sherman's attorney, and reveals nothing of Sherman's own motivation. *See Hogenson v. Service Armament Co.,* 77 Wn.2d 209, 214, 461 P.2d 311 (1969).

At the Board's hearings, the letter had been excluded as immaterial. When an exhibit is first excluded at a Board hearing and then admitted at a superior court appeal trial, testimony cannot be offered to explain the exhibit absent procedural irregularities in the preparation of the record at the administrative hearing. RCW 51.52.115. The letter was the only exhibit admitted at the appeal trial and may have drawn unwarranted attention. Because of the limitation against live testimony, Sherman was denied the opportunity to mitigate any damaging impact admission of the letter may have caused. We find the letter was irrelevant and improperly admitted, although its admission alone does not constitute reversible error. On remand, the letter should not be admitted.

The third issue is whether the trial court erred when it permitted respondents' counsel to ask Sherman's medical witnesses general questions about the effects of rear–end collisions on persons with preexisting low back problems.

Sherman was involved in two rear–end collisions after his 1972 industrial accident. Dr. Bridgeford, Sherman's medical witness, testified that these accidents had no effect on Sherman's low back condition but may have resulted in some injury to his neck and upper back. Respondents' counsel asked Dr. Bridgeford and Dr. Monk, Sherman's other medical witness, whether automobile accidents or other trauma could also aggravate a preexisting low back condition.

Because no showing was made that Sherman's subsequent auto accidents had any effect on his disability, respondents' questions were misleading. Such questions improperly suggested to the jury that there may have been a superseding cause of Sherman's condition although no proof of such a cause is in the record. *Allen v. Mattoon,* 8

Wn. App. 220, 504 P.2d 316 (1972) addressed a similar situation. In *Allen,* a party, Mattoon, cross–claimed for damages resulting from injuries in an automobile accident. The trial judge allowed the opposing party to present evidence that Mattoon was involved in a subsequent accident. No evidence, however, of injury resulting from the second collision surfaced at trial. The *Allen* court stated:

Had this theory [that some of Mattoon's injuries were a result of the second collision] been supported by evidence, the decision to admit the second collision would meet the test of relevancy on the damage issue. This did not materialize. As observed by the trial judge, there was only a fragmentary and nonspecific reference in the testimony of Mattoon's physician . . . On the state of the record, a jury could only speculate as to the amount of aggravation, if any, because the only affirmative evidence on the issue came from Mattoon who denied hospitalization and described a cut on the forehead as superficial and covered by a band–aid. In view of these developments, the admission of the second collision was improper.

*Allen,* at 229–30.

Similarly, because the respondents presented no evidence showing that Sherman's low back condition was aggravated by his automobile accidents, it was improper for respondents' counsel to ask broad questions about the effects of rear–end accidents on persons with low back injury. A jury could only speculate as to the amount of aggravation, if any, Sherman may have suffered as a result of his automobile accidents because no affirmative evidence on the issue surfaced during trial. Nevertheless, we do not find that respondents' questions constitute prejudicial error. Sherman had an opportunity to mitigate any damage when his expert testified that there was no causal link between his subsequent accidents and his condition. On remand, such questions should not be allowed unless the respondents are able to support by evidence that the subsequent accidents affected Sherman's low back condition.

The fourth issue is whether the trial court erred in giving

instruction 12. Sherman contends that the introductory paragraph to instruction 12 incorrectly characterized him as the party seeking relief at the appeal trial.

Instruction 12 was the instruction on proximate cause. Except for the challenged introductory paragraph, it is taken verbatim from WPI 155.06. The challenged portion of the introductory paragraph states:

> The condition *for which compensation is sought* must be proximately caused by the September 8, 1972 industrial injury which was the basis of the original claim against the Department . . .

(Italics ours.) Clerk's Papers, at 20.

The introductory paragraph may have been misleading because it refers to compensation in the present tense and therefore suggests that Sherman was seeking compensation at the appeal trial. Sherman, as the defendant, did not begin the instant proceeding and therefore was not the party seeking compensation at the appeal trial. On remand, the instructions should be reviewed carefully to insure that it does not appear that Sherman is the party seeking relief at the appeal trial.

The fifth issue is whether the trial court erred when it refused to give Sherman's proposed instruction 17 which Sherman referred to as the whole man theory of total disability but instead only gave instruction 14 based on WPI 155.07 (permanent total disability).

Sherman's proposed instruction 17 states:

> The test for total disability requires a study of the whole person as an individual—their weaknesses and strengths, their age, education, training and experience, their reaction to the injury, their loss of function, and any other relevant factors that determine the question as to whether he or she is, as a result of the industrial injury, disqualified from obtaining or performing employment generally available in the labor market.

Clerk's Papers, at 30. This language was taken from the *Fochtman v. Department of Labor & Indus.*, 7 Wn. App. 286, 295, 499 P.2d 255 (1972) discussion of the requisite proof of permanent total disability. The court gave instruc-

tion 14, which states:

> Permanent total disability is an impairment of mind or body which renders a worker unable to perform a gainful occupation with a reasonable degree of success and continuity. It is the loss of all reasonable wage earning capacity.
>
> A worker is totally disabled if unable to perform regular gainful employment within the range of his or her capabilities, training, education and experience. A worker is not totally disabled solely because of inability to return to his or her former occupation. However, total disability does not mean that the worker must have become physically or mentally helpless.
>
> Total disability is permanent when it is reasonably certain to continue for the foreseeable future.

Clerk's Papers, at 22. Both instructions correctly embody the law in this area. Since either instruction could have been given, it was not necessary that proposed instruction 17 be given separately. The trial court did not err when it refused to give proposed instruction 17 because instruction 14 constituted an adequate explanation of the law of permanent total disability.

The final issue is whether the trial court should have granted Sherman's motion for a new trial.

Generally, a trial court's decision to grant or deny a motion for a new trial rests within the sound discretion of the trial court. *Detrick v. Garretson Packing Co.*, 73 Wn.2d 804, 812, 440 P.2d 834 (1968). However, "[t]his principle is subject to the limitation that, to the extent that such an order is predicated upon rulings as to the law, such as those involving the admissibility of evidence or the correctness of an instruction, no element of discretion is involved." *Detrick,* at 812 (quoting *Johnson v. Howard,* 45 Wn.2d 433, 436, 275 P.2d 736 (1954)); *State v. Crowell,* 92 Wn.2d 143, 145–46, 594 P.2d 905 (1979). The motion for a new trial in this case alleged the instructional and evidentiary errors discussed above.

Since we have determined that some instructional and evidentiary errors occurred at trial, a new trial should be

granted if any error was prejudicial. An error is prejudicial if it affects or presumptively affects the outcome of the trial. *Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983). Because respondents' use of hearsay conclusions derived from medical reports not in evidence was prejudicial, the judgment is reversed and the cause is remanded for a new trial in accordance with the provisions of this opinion.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and DURHAM, JJ., concur.