Mrs. Nancy W. BOX, Appellant,

v.

Mrs. Martha C. SWINDLE, Appellee.

No. 19227.

United States Court of Appeals
Fifth Circuit.
Aug. 24, 1962.

James E. Price, Corinth, Miss., Stovall & Price, Corinth, Miss., of counsel, for appellant.

Floyd W. Cunningham, Booneville, Miss., Cunningham & Cunningham, Booneville, Miss., of counsel, for appellee.

Before JONES, WISDOM and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

This is an appeal by Mrs. Box, defendant in the court below, from a final judgment rendered by the United States District Court for the Northern District of Mississippi upon a jury verdict awarding Mrs. Swindle, plaintiff below, damages in the amount of $15,000.00 for personal injuries allegedly sustained in an automobile accident.

On September 11, 1959, at approximately 7:30 P.M., Mrs. Box was driving a 1955 Ford automobile south on Filmore Street in the City of Corinth, Mississippi, which was also U. S. Highway 45, en route to a housing project to pick up a babysitter. The housing project was located on the east side of Filmore Street. To enter one must turn left off of Filmore Street. As Mrs. Box approached the street leading into the housing project, she saw several cars approaching from the south. Because of the close proximity of the cars, she was unable to make a left turn at that instant and she applied her foot brake and brought her car to a stop. It was then that Mrs. Swindle's car crashed into the rear of Mrs. Box's car. It was undisputed that Mrs. Box's brake light was working and came on as soon as the brake was applied; and it was also undisputed that she did not at any time give a manual or a blinker left turn signal, nor did she give a manual stop signal before stopping.

As to how the collision occurred, there were two conflicting views. The substance of Mrs. Swindle's version was that she was driving along behind Mrs. Box's automobile at a distance of two car lengths and that both automobiles were traveling at a lawful, reasonable and proper speed, when suddenly, without any warning, Mrs. Box applied the brakes on her automobile, bringing it to an abrupt halt. Mrs. Swindle saw the brake lights flash on, applied her brakes, as quickly as possible, but the stop of the front vehicle was so abrupt there was insufficient time and distance within which to bring her automobile to a stop and avoid the collision. Mrs. Box claims that she intended to make a left turn into the housing project and started putting this intention into effect when Mrs. Swindle was approximately two-tenths of a mile behind her traveling at a dangerous rate of speed. Mrs. Box gradually brought her automobile to a stop, allowing ample time and distance for Mrs. Swindle to stop, but Mrs. Swindle negligently drove into the rear of Mrs. Box's car. The jury decided in favor of Mrs. Swindle. The questions are whether there was sufficient evidence to go to the jury; and whether the trial judge committed error in his charge to the jury relating to negligence under Mississippi law.

Mrs. Box strongly urges that since it is admitted that the brake lights came on as soon as the brakes were applied; that Mrs. Swindle saw the lights; that she fully discharged her duty to the trailing driver under Mississippi law. She cites the Mississippi Code of 1942:

Section 8192(c):

"No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided hereinafter to the driver of any vehicle immediately to the rear when there is opportunity to give such signal."

Section 8193:

"The signals herein required shall be given either by means of the hand and arm or by a signal lamp or signal device of a type approved by the department * * *."

Section 8229–06:

"Stop lights shall be actuated upon application of the service (foot) brake and * * * may be incorporated with a tail lamp."

In Wilburn v. Gordon, 209 Miss. 27, 45 So.2d 844 (1950), it was held that the trial court erred in giving a charge that a failure on the part of the plaintiff to give a proper signal before stopping was negligence per se because it was admitted that the plaintiff's car was equipped with a working stop light which was visible to the defendant. Mrs. Box argues that this is authority for the proposition that actuating the brake

light is all that is required under Mississippi law. While the case may appear to so hold in the circumstances there involved, it does not stand for the proposition that the mere giving of the signal is a complete defense in every case. A fact question for the jury is presented, considering all the circumstances involved, and the jury must decide whether failure to give the signal is negligence proximately causing the injuries alleged; or whether giving it in the circumstances involved was sufficient to avoid the collision and resulting injuries. The violation of the commands of a statute may be negligence per se in a given set of circumstances; but obeying the statute in a mere technical sense does not necessarily exonerate one from a charge of negligence in every case.

Mrs. Box also relies on Mississippi Power & Light Co. v. Bradley, 220 Miss. 304, 70 So.2d 611 (1954), in support of her contention that the code sections cited are entirely controlling here. In Bradley the lead vehicle, a truck, was 30 to 40 feet ahead of the following vehicle, an automobile, and after beginning to make a turn stopped suddenly and was struck from the rear by the automobile. The truck was equipped with rearend stop lights actuated by application of the brakes. The operator of the automobile testified that when he saw the flash of the brake lights on the truck, he removed his foot from the accelerator but did not immediately apply his own brakes; because, he testified, he thought he could get around the truck, but was prevented from doing so by another approaching vehicle. When the automobile driver finally applied his brakes, he was much closer to the truck and was unable to stop. It was unquestioned that the truck's stop light was flashed on in time to warn any vehicle to the rear. The driver of the automobile to the rear testified that he did see it in time to stop if he had applied his brakes promptly when he first saw the light. Recovery was denied the operator of the automobile. We cannot agree with Mrs. Box that the code sections cited or the previously decided cases

stand for the proposition that the operator of the front or lead vehicle is never negligent if the brakes are applied and the stop light flashes on, regardless of the circumstances.

We believe the correct rules are stated in Continental Southern Lines v. Klaas, 217 Miss. 795, 65 So.2d 575 (1953). In that case the action was based on the negligence of appellant's bus driver, Welch, in bringing his bus to a sudden stop partially on the paved and main traveled portion of the highway without ascertaining if he could do so in safety and without giving sufficient warning to two trucks following, thus causing the second truck to swing from behind to avoid a collision with the first truck, and into the pathway of the Klaas car. In affirming the judgment against the bus company predicated upon the negligence of its driver, the court said:

"Whether Welch was guilty of negligence in the manner in which he brought his bus to a stop, whether he was negligent in failing to keep a proper lookout for other motor vehicles using the highway, and whether he was negligent in failing to give an appropriate signal to indicate his intention to stop for a reasonable distance before stopping, whether he was negligent in stopping his bus too suddenly and without allowing sufficient time for the vehicles behind him to reduce their speed and come to a stop with safety, and whether he was negligent in failing to turn as far to the right as practicable, including sound and safe shoulders, when he brought his bus to a stop, were questions for the jury to decide. [citing numerous cases from Mississippi and other courts] And we think that there was ample evidence to support the findings of the jury that Welch was negligent."

In the instant case there are two conflicting versions of how the wreck occurred. The jury believed Mrs. Swindle's version and returned a verdict in her favor. To hold that all Mrs. Box had

to do was put on the brake actuating the stop light in order to escape liability would, in the words of the trial judge, be "a view too narrow and legalistic". Such a conclusion puts the burden on the driver of the trailing car to know that the car in front is going to stop abruptly. It is more realistic to say that the driver of a trailing car is charged with the responsibility of exercising reasonable care to maintain a sufficient distance between him and the preceding car as will permit him to bring his vehicle to a stop without a collision, if the preceding vehicle stops in a reasonable, safe and ordinary manner. This, of course, is necessarily a question to be determined from the surrounding circumstances, which is the primary function of the jury.

We have examined the record and find sufficient evidence to support the version of the facts as presented by Mrs. Swindle and sufficient evidence of proximate cause. We conclude that we should not set aside the verdict of the jury as a matter of law.

We consider now the Court's instructions to the jury. We have concluded that the Court correctly refused to instruct the jury that the application of brakes causing the brake actuated stop light to flash on is the only requirement of the operator of the lead vehicle under the facts and in the circumstances of this case. Mrs. Box not only contends that the Court erred in permitting the jury to decide the case, but she also claims that the instructions given were erroneous.

Mrs. Box has selected three portions of the Court's charge to show that the Court improperly charged the jury on the law of this case. In the first part of the questioned charge [1] the Court simply told the jury that if they found that Mrs. Box was guilty of *negligently* committing any of the three alleged acts, and that such negligence was the sole proximate cause of the accident, they should find for Mrs. Swindle. Such was the negligence of Mrs. Box as claimed by Mrs. Swindle. In the second challenged part of the charge [2] the Court told the jury that if Mrs. Box suddenly and without proper warning brought her automobile to a stop, and there was insufficient time and distance to permit Mrs. Swindle to bring her vehicle to a halt, they should bring in a verdict for Mrs. Swindle because in those circumstances Mrs. Box would be negligent. As to the third challenged excerpt [3] there was simply pre-

1. "If you find from a preponderance of the evidence that Mrs. Box negligently failed to keep a proper lookout for other motor vehicles also using the street and highway, or if you find from a preponderance of the evidence that she negligently failed to continuously give a signal to indicate her intention to stop or to make a left turn, for a reasonable distance before stopping, or if you find that she negligently in stopping her automobile, that she negligently stopped her automobile too suddenly without allowing sufficient time for the Plaintiff's vehicle behind her to reduce speed and to stop; and if you find from a preponderance of the evidence that any one or more of these negligent acts on her part, if you find one, were the sole proximate cause of the collision, you should bring in your verdict for the Plaintiff."

2. "Now, on the other hand, as I have mentioned partially to you, Mrs. Swindle claims that she was not that distance away when the automobile stopped, but that she was following behind the Box automobile a distance of approximately two car lengths traveling at approximately the same speed, when suddenly and without warning and without any signal, Mrs. Box brought the automobile to an abrupt stop, and that there was an insufficient time and distance then remaining within which to permit Mrs. Swindle to bring her vehicle to a halt without colliding with the vehicle driven by Mrs. Box.

"If you find that from a preponderance of the evidence to be the case, then you should bring in your verdict for the Plaintiff, since Mrs. Box would have been negligent under the Plaintiff's version of how the collision occurred."

3. "Again to summarize the various aspects of the theory of the two parties to this lawsuit, Mrs. Swindle claims that this evidence warrants your finding that Mrs. Box was guilty of negligence in failing to keep a proper lookout for other motor vehicles that were using the street and highways or in failing to continuously

sented to the jury the same three theories of negligence as previously given. The Court then proceeded to charge the jury on a reduction of damages in the event they also found the plaintiff guilty of contributory negligence.

Section 8192(a) and (b), Mississippi Code, 1942, provides:

"(a) No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement.

"(b) A signal of intention to turn right or left shall be given continuously for a reasonable distance before turning."

Under the authority of these statutes and the Klaas case, supra, we find no error in the charges given by the Court or the charges refused by the Court.

The only medical witness who testified for Mrs. Swindle was Dr. R. B. Warriner, Jr. on September 12, 1959, the day after the accident, Mrs. Swindle was admitted to the Patrick-Warriner Clinic where Dr. Warriner made some x-rays. On cross-examination it was determined that in addition to the x-rays made by Dr. Warriner, other x-rays were taken upon Mrs. Swindle's admission to the hospital. These additional x-rays were taken at the request of Dr. Warriner and were read and interpreted by Dr. Stacy, the radiologist at the hospital. Over an objection by Mrs. Swindle to any testimony concerning the additional x-rays, it was developed out of the presence of the jury that Dr. Warriner relied on the diagnosis of Dr. Stacy and referred x-rays to him for examination.

Although Dr. Warriner diagnosed the case as a low back muscle strain, Dr. Stacy's report showed a fractured vertebrae, but that the fracture was possibly an old one. There was a question mark preceding the word "old". Dr. Warriner stated that his diagnosis as a low back muscle strain was based on Dr. Stacy's report that the chip fracture of the vertebrae was an old injury. However, Dr. Warriner made additional x-rays on April 24, 1961 in order to bring his records up-to-date. These later x-rays showed that a calcium or spur formation had developed which caused an arthritic condition. The later x-rays caused Dr. Warriner to change his opinion, and he then concluded that the chip fracture which showed up in the x-rays following the automobile collision was not an old injury.

The Court ruled that the diagnosis of Dr. Stacy in the form of a report based on x-rays taken by him concluding that the fracture was possibly an old injury was inadmissible on the grounds that it would be hearsay and prejudicial to Mrs. Swindle unless Dr. Stacy could be cross-examined. Mrs. Box claims this was error, citing Baltimore & Ohio R. Co. v. O'Neill (6 Cir., 1954), 211 F.2d 190. In that case the written reports of the x-rays were in conflict with the oral testimony of the doctor, and over objection, the trial court permitted the reports to go to the jury. On appeal the Court said in affirming the judgment:

"Where a foundation is properly laid such evidence is admissible on cross-examination for the purpose of discrediting the witness, but the use

---

give a signal to indicate her intention to stop or to make a left turn for a reasonable distance before stopping, and in stopping her automobile as she says too suddenly without allowing sufficient time for the vehicle behind to bring—to be brought to a stop with safety.

"If you find from a preponderance of the evidence that the Defendant, Mrs. Box, was guilty of one of those theories of negligence, one of those specifications of negligence, and that if such negligence, if you find any on her part, was the sole proximate cause, you can find your verdict for the Plaintiff and award her full damages."

of such evidence should be strictly limited and the jury carefully instructed about its limited use."

If Dr. Warriner had based his present diagnosis on Dr. Stacy's reports, or had been testifying from Dr. Stacy's reports, the contents of the report should have been admitted after proper instructions from the trial court subject to the restrictions, limitations and uses announced in the quotation above. However, Dr. Warriner was not testifying with reference to the x-rays made by Dr. Stacy but to x-ray pictures made by himself immediately after the injury and to the pictures made the day before the trial which changed his opinion. The report of Dr. Stacy would not discredit the testimony of Dr. Warriner, for until the final x-rays were made, Dr. Warriner had reserved every reasonable doubt raised by Stacy's report which Dr. Stacy himself highly questioned.

█ If Dr. Stacy had been present, his testimony would have been admissible to create whatever doubts, conflicts or contradictions may have resulted; but he was not a witness. F.R.Civ.P. 61, 28 U.S.C.A.; 3 Barron & Holtzoff, Fed. Practice and Procedure § 1351, p. 441, § 1357, p. 456, Moore's Federal Practice, 2d ed. Vol. 7 § 61.11, p. 1030.[4]

For the reasons set out herein, the judgment is

Affirmed.

---

4. Moore comments as follows in Rule 61:
"Technically, Rule 61 is only a mandate to the district court, since the Supreme Court was only given authority to promulgate rules for the base line courts. But there is no doubt that the Court's views on harmless error, as expressed in the Rule, are gladly followed by the courts of appeals as expressive of the best practice. In University City, Mo. v. Home Fire & Marine Ins. Co. [114 F.2d 288], the Circuit Court of Appeals for the Eighth Circuit said with respect to Rule 61: 'This rule is intended for the guidance of the district court, but it should be heeded by the appellate court to make it effective'."

The following is from Barron & Holtzoff:
"Appellate courts, so it is said, have a higher function than to be 'impregnable citadels of technicality'. Thus the standards set forth in Rule 61 are applied also by reviewing courts in considering whether error which has occurred is sufficiently prejudicial to require reversal of the trial court's decision. They will not disturb a judgment if, on examination of the entire record, it appears that substantial justice has been done. The court will not reverse unless the appellant shows that the error has been prejudicial."