**Ted Lewis BOBB, Individually, Plaintiff-Appellant,**

v.

**MODERN PRODUCTS, INC., et al., Defendants-Appellees.**

No. 79–3475.

United States Court of Appeals, Fifth Circuit.
Unit B

June 26, 1981.

Rehearing Denied Aug. 21, 1981.

Bailey & Dawes, John H. Adams, Miami, Fla., for plaintiff-appellant.

Brendan P. O'Sullivan, Tampa, Fla., for defendants-appellees.

Before GODBOLD, Chief Judge, MORGAN and HENDERSON, Circuit Judges.

MORGAN, Circuit Judge.

Ted Lewis Bobb, a resident of the Republic of Guyana, sued the American owners and managers of the shrimp trawler, "Sea Knight" for their negligence under the Jones Act, 46 U.S.C. § 688, and for the unseaworthiness of their vessel under general maritime law. The suit arose from an injury to Bobb's left arm which occurred when a whip line snapped on the ship, breaking Bobb's arm and knocking him to the deck. At trial the district judge directed a verdict in favor of all defendants except Modern Products, Inc., and the jury returned a verdict for Bobb in the amount of $6,000.00. The judge reduced this verdict by half because of the jury's additional special finding that Bobb was fifty percent contributorily negligent. The plaintiff raises several issues on appeal: (1) whether the

district judge erred in refusing to allow into evidence the deposition of one of the plaintiff's expert witnesses while permitting the defendant to cross-examine from that same doctor's medical report, (2) whether the judge erred in failing to direct a verdict of zero contributory negligence by the plaintiff, and (3) whether the jury's verdict was inadequate and contrary to the evidence. Reversing on the basis of the improper use of a hearsay report in cross-examination, we remand for a new trial.

## I.

This maritime saga began aboard the good ship "Sea Knight". Appellant was employed as a seaman on a shrimp trawler owned and operated by Modern Products, Inc. On October 31, 1975, the boat was shrimping in the waters of the Atlantic Ocean near Guyana. While the ship nets were being raised, appellant Bobb, following the suggestion of his fellow crewman, attempted to attach a second whip line to the shrimp bags on the starboard side of the ship. The nets were unusually full, and the first whip line, obviously frayed and worn, did not appear strong enough to withstand the strain of the load. While Bobb was engaged in the task of attempting to attach the second whip line, the first line snapped, striking and breaking his left arm, and throwing him to the deck. Bobb suffered through the pain of the injury for several hours without medication or relief until the boat could return to port to obtain medical attention for him.

After arriving at port, plaintiff was carried to Mercy Hospital in Guyana. The next morning a Dr. Searwar set his arm in a cast, and after approximately two weeks plaintiff was released from the hospital. The case was removed on March 4, 1976, and on April 15, 1976, Dr. Searwar told plaintiff that he was able to return to work. Despite the doctor's suggestion of fitness, however, plaintiff did not return to work as a seaman because of pain he claimed continued to exist in his left arm.

## II.

The first issue before this court involves the use by the defendant's counsel on cross-examination of a medical report issued by an expert whose deposition plaintiff was denied the right to utilize at trial. Plaintiff-appellant challenges both the decision by the trial judge disallowing the use by the plaintiff of the doctor's deposition and the subsequent decision by the court permitting the defendant's use of that same doctor's report to cross-examine the plaintiff's expert witness whom the court allowed to testify. Although we find no error in the trial court's refusal to admit the expert's deposition, we find reversible error in the judge's subsequent ruling permitting use by the defendant of that doctor's report, and accordingly we remand for a new trial.

A short time before the pre-trial conference plaintiff learned that Dr. Millheiser, the medical expert he had planned to use as his expert at trial, would be performing surgery in Tampa on the day of the trial and would not be available to testify. Because of Dr. Millheiser's unavailability, plaintiff listed Dr. Punraj Singh in the pre-trial order as his expert witness, although defendant had not previously been notified of Dr. Singh's knowledge of the case. Meanwhile plaintiff's attorney scheduled the deposition of Dr. Millheiser for September 6, 1978, to preserve his testimony for trial in the event he would be permitted to use Dr. Millheiser as an expert witness. Plaintiff notified the defendant's counsel of the deposition on October 31, 1978. Defendant's counsel, however, relying on the court's pre-trial order setting August 1, 1979 (extended to August 31, 1979 by agreement of the parties) as the cut-off date for discovery, failed to attend, and the deposition of Dr. Millheiser was taken without the benefit of cross-examination by defendant's counsel.

At trial defendant's counsel objected to the use of Dr. Singh as an expert witness because of improper discovery practices by the plaintiff. Ruling in favor of defendant's motion to strike Dr. Singh as plaintiff's witness, the judge initially agreed to

permit Dr. Millheiser's deposition to be used as plaintiff's expert witness. However, when the judge learned that the deposition was taken on improper notice to the defendant's counsel and without the benefit of cross-examination, the judge disallowed the use of the deposition. The judge permitted Dr. Singh to testify in order to allow the plaintiff at least one expert witness; however, there were procedural problems with both the notice to defendant concerning Dr. Singh and the taking of the deposition of Dr. Millheiser. Despite the judge's attempt to deal fairly with both parties, plaintiff argues that he had an absolute right to introduce the deposition of Dr. Millheiser at trial.

 Plaintiff's contention is without merit. Use of a deposition at trial is discretionary with the trial judge, and the judge's decision will not be overturned except for abuse of that discretion. *See Reeg v. Shaughnessy,* 570 F.2d 309 (10th Cir. 1978); *Sims Consolidated, Ltd. v. Irrigation and Power Equipment, Inc.,* 518 F.2d 413 (10th Cir. 1975). Rule 32(a) of the Federal Rules of Civil Procedure, concerning the use of a deposition, provides in pertinent part that "a deposition . . . may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof. . . ." The rule implies a principle of fairness requiring that the opposing party have the right or opportunity to be present at the deposition. *See Wong Ho v. Dulles,* 261 F.2d 456 (9th Cir. 1958); *Klein v. Tabatchnick,* 459 F.Supp. 707 (S.D.N.Y.1978) (depositions admitted where proper notice and opportunity to cross-examine). In a case such as this one, where problems with discovery existed from the beginning of the case, we cannot say that the trial judge abused his discretion in

prohibiting the use of a deposition not subject to cross-examination. Relying on the local rules of the Middle District of Florida requiring ten day notice before the taking of a deposition,[1] the trial judge concluded that the defendant had short notice and was not able to attend. Apparently, the judge also assumed that the testimony in the deposition was cumulative to the live testimony of Dr. Singh. Cumulative evidence may be excluded in the judge's discretion. *Liner v. J. B. Talley and Co., Inc.,* 618 F.2d 327, 331 (5th Cir. 1980). In this case we hold that the district judge did not err in disallowing the use of a deposition taken at a time when defendant's counsel could not be present.[2]

 Although we find that the district judge did not err in prohibiting the use of the deposition, we hold that the judge did commit reversible error when he permitted the defendant's counsel to question the plaintiff's expert from the report of the doctor whose deposition was excluded. Wide latitude is usually given to a cross-examiner in his attempts to discredit the witness. However, cross-examination which attempts to impeach by slipping hearsay evidence into the trial will not be permitted, particularly in a case such as this one where the cross-examiner had previously succeeded in keeping out closely related evidence.

Although this case involves no formal introduction of hearsay evidence into the trial, the defendant's counsel used statements from a report not in evidence to attempt to impeach the plaintiff's witness. In *Bryan v. John Bean Division of FMC Corp.,* 566 F.2d 541 (5th Cir. 1978), a cross-examining plaintiff's counsel paraphrased parts of two experts' reports, read from them verbatim, and referred to them in his

1. Local Rule 3.02(a), Rules of the United States District Court for the Middle District of Florida.

2. Apparently the trial judge relied not simply on a technicality of short notice but rather on a general principle of fairness to both parties. In addition to violating Local Rule 3.02(a), the taking of the deposition arguably violated the court's order of November 1, 1978, mandating August 1, 1979 (extended to August 31 by

agreement of the parties), as the completion date for discovery, and defendant apparently relied on this order in refusing to attend. Furthermore, defendant states in its brief that it had previously advised the plaintiff's attorney that it would be unable to attend the deposition at the time, date, and place scheduled, but the plaintiff's attorney proceeded to take the deposition without defendant's presence.

closing argument. In that case the court held that the evidence was inadmissible under Rule 705 to show the basis of the expert's opinion or for impeachment purposes. In denying inadmissibility for impeachment purposes, the court relied on the earlier case of *Box v. Swindle,* 306 F.2d 882 (5th Cir. 1962), stating:

> In *Box v. Swindle, supra,* this circuit held that reports of others examined by a testifying expert and conflicting with the testimony of the expert could not be admitted even as impeachment evidence unless the testifying expert based his opinion on the opinion in the examined report or testified directly from the report.

*Id.* at 546. The rule established in *Swindle* and applied in *Bryan v. John Bean Division of FMC Corp., supra,* indicates that the utilization of the expert's report on cross-examination was improper. Plaintiff's witness did not state that he had relied on the report, even though he had admitted that he had seen it. Until defendant established that plaintiff had relied on the report of the other doctor, it was improper for the defendant to read from that report in cross-examining plaintiff's witness.

■ Defendant suggests that even if it was error to allow the reading from the report, the error was harmless under Rule 61 of the Federal Rules of Civil Procedure, and does not require reversal. However, we find that the error, although occurring in the form of a single question to the witness, was prejudicial. The defendant used the fact that plaintiff's witness disagreed with a conclusion in the report by the American doctor to emphasize to the jury that the foreign doctor, Dr. Singh, was the only doctor to testify on behalf of Bobb, a foreign plaintiff. Indicating plaintiff's witness response to his improper question, defendant's counsel misled the jury into believing that the excluded American doctor's

testimony disfavored plaintiff's case.[3] The argument was improper in that it utilized the improper hearsay question as substantive evidence supporting the defendant's own witness. Furthermore, the argument attempted to appeal to national prejudice against the plaintiff. Because the error at trial created an unfair impression before the jury, it cannot be held as harmless, and the case must be remanded for a new trial.

### III.

Although reversing the case on the first issue, we must also discuss the contributory negligence issue raised by the plaintiff in order to provide direction for the new trial. Plaintiff contends that the judge should have directed a verdict that the plaintiff was not contributorily negligent. Plaintiff argues that he had no duty to act other than he did, and indeed was under a duty to obey the orders of his captain or fellow crewman. Considering the law and the facts as revealed below, however, we do not find plaintiff free of contributory negligence as a matter of law, and find no error in the trial judge's refusal to direct a verdict.

■ The law is well settled that contributory negligence by the plaintiff will not defeat a seaman's claim under the Jones Act, but may be considered as comparative negligence to mitigate the damages in proportion to the degree of the plaintiff's negligence. *See, e. g., Allen v. Seacoast Products, Inc.,* 623 F.2d 355 (5th Cir. 1980); *Hlodan v. Ohio Barge Line, Inc.,* 611 F.2d 71 (5th Cir. 1980); *Reyes v. Vantage S.S. Co., Inc.,* 609 F.2d 140 (5th Cir. 1980), *modifying* 558 F.2d 238 (5th Cir. 1977). In order for contributory negligence to exist at all, however, the seaman in question must have had a duty to act or refrain from acting. In

---

**3.** Although Dr. Millheiser's deposition disagreed with Dr. Singh's testimony on a particular finding, Dr. Millheiser's conclusions were certainly favorable to plaintiff's case or else the plaintiff would not have attempted to introduce the deposition into evidence. Defendant suggests that plaintiff's use of Dr. Millheiser's report in cross-examination of defendant's expert

removed any prejudice that might have occurred. However, after objecting, plaintiff was in a position of using whatever was available to avoid a distortion of the truth. Plaintiff could not argue Dr. Millheiser's conclusions to the jury because the questions from the report were allowed for the purpose of impeachment, not as substantive evidence.

*Spinks v. Chevron Oil Co.*, 507 F.2d 216 (5th Cir. 1975), a panel of this court found that the duty of a seaman is to do the work assigned, not to find the safest method for doing the work. Whereas the employer's duty to provide a safe place for the seaman to work is a broad one, "the seaman's duty to protect himself . . . is slight." *Id.* at 223. The court in *Spinks* held, applying these standards, that the youngest, newest member of the crew could not be completely responsible for realizing that the method of work chosen was dangerous. *See also Ballwanz v. Isthmian Lines, Inc.*, 319 F.2d 457 (4th Cir. 1963). The language of *Spinks* considered together with its holding indicates, contrary to plaintiff's argument, that the seaman has some duty to use reasonable care, even though that duty is slight. For example, the seaman must in some circumstances exercise reasonable care to prudently choose the proper equipment for the work to be done, if that equipment is available. *See Hussein v. Isthmian Lines, Inc.*, 405 F.2d 946 (5th Cir. 1968). *Cf. Mahnich v. S.S. Co.*, 321 U.S. 96, 103, 64 S.Ct. 455, 459, 88 L.Ed. 561 (1943) (alternative equipment on board the boat does not *excuse* the owner's failure to provide safe equipment); *Darlington v. National Bulk Carriers*, 157 F.2d 817 (2d Cir. 1946) (seaman's obedience to an order to use a defective spraygun did not *excuse* owner's failure to provide an adequate one). Thus, the issue remaining to be resolved in this case is whether the judge erred in failing to direct a verdict that the plaintiff fulfilled his slight duty to protect himself.

The standard on review for consideration of a directed verdict is the same test that governs a district court's consideration of the motion—whether viewing the evidence with all reasonable inferences most favorable to the party opposing the motion, there is substantial evidence opposed to the motion. *Williams v. United Ins. Co. of America*, 634 F.2d 813 (5th Cir. 1981). Unless the facts and inferences are so strong and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict, the motion should be denied. *See Bazile v. Bisso Marine Co., Inc.*, 606 F.2d 101, 104 (5th Cir. 1979), *cert. denied*, —— U.S. ——, 101 S.Ct. 94, 66 L.Ed.2d 33 (1980).[4]

The present case is remarkably similar to two previous cases from our circuit. In the most recent case, *Allen v. Seacoast Products, Inc., supra*, 623 F.2d at 362, this court affirmed the trial judge's grant of a directed verdict finding no contributory negligence by the plaintiff. The lower court found "not one scintilla of evidence" to support a jury finding that the plaintiff was not looking out for his own safety, and this court agreed in that conclusion. In that case the plaintiff was attending to the ship captain who was injured, and was unaware of any stress developing on the mooring lines of the boat. This court found that the captain, who was aware of the problem with the lines, should have warned the plaintiff of the danger, and therefore plaintiff did not fail to exercise reasonable care.

The present case is distinguishable from *Allen v. Seacoast Products, Inc., supra*, in that the seaman in the present case admitted that he was aware of the strain on the whip line and the fact that it was frayed. A Mr. Robert Vierra, witness for the plaintiff, testified concerning the danger of a frayed whip line and good seamanship practices in dealing with one. Bobb's awareness of the strain on the worn whip line, together with Vierra's testimony concerning good seaman practices, offered some evidence that Bobb had not exercised the reasonable care required of a seaman. Although the jury should be properly instructed as to the slight duty of care required by a seaman under the Jones Act, the question of the seaman's negligence in this case remained

---

4. The court in *Bazile* also found that under *Lavender v. Kurn*, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1945), the standard for granting a JNOV is even stricter in a Jones Act case. The court required "a complete absence of probative facts supporting the verdict" in order to grant a motion for a JNOV. However, the court applied the less strict standard stated above. Under the stricter standard we clearly would find no error in refusing to grant the motion for directed verdict.

for the jury. Thus, unlike in *Allen v. Seacoast Products, Inc., supra*, a directed verdict would not have been proper.

In another Fifth Circuit case involving a whip line, *Williams v. Brasea, Inc., Vessel Ciapesc I*, 497 F.2d 67 (5th Cir. 1974), *modified in* 513 F.2d 301 (5th Cir.), *cert. denied* 423 U.S. 906, 96 S.Ct. 207, 46 L.Ed.2d 136 (1975) (hereinafter *Williams I*), the plaintiff, master of the ship, was injured by getting his arms caught in the whip line when he was attempting to untangle it and his crewman turned on the power winch. The court, initially assuming the master had given the order to the crewman to engage the winch, held that the crewman could not have been negligent in failing to see whether the ship master's hands were free from the line. Although the court held that the master's actions in using his hands to disentangle the line could be deemed contributory negligence, the court further held that this negligence could not have proximately caused his injury if the crewman acted without an order and started the winch. On remand the lower court found that the plaintiff had not given an order to the crewman to start the winch, but found that the plaintiff was still 40 percent contributorily negligent because he had placed himself in a position of danger. In *Williams v. Brasea, Inc.*, 549 F.2d 977 (5th Cir. 1977) (hereinafter *Williams II*), a panel of this court again reversed the decision, following the earlier decision in *Williams I* to hold that the plaintiff could not be contributorily negligent as a matter of law if he did not give the order to start the winch. In so ruling, the court rejected the trial judge's finding that the seaman was contributorily negligent in putting himself in a position of danger.

Although the court in *Williams II* emphasized the clarity of the instructions of *Williams I*, we must carefully examine the holdings of both cases to determine their precedential value for the present case. In distinguishing this case, we note that the court in *Williams I, supra*, 497 F.2d at 73, found it unnecessary to consider whether instructions from a fellow crewman constituted an order precluding a finding of negligence on the part of the recipient of the order. In this case testimony indicated that both plaintiff and his fellow crewman operating the winch were of equal rank, and thus we must consider a question similar to the one left unresolved in *Williams I*—whether a plaintiff following instructions from a fellow crewman can be contributorily negligent in following the instructions. Although plaintiff's fellow seaman testified that neither he nor the plaintiff was subject to orders from one another, the plaintiff testified that when raising the nets the person handling the lines is subject to the instructions of the seaman operating the winch. If, on remand, the testimony clearly indicates the plaintiff was correct in his assumption that he was subject to the orders of his fellow seaman, then the trial judge should find that the suggestion of his fellow seaman amounted to an order which plaintiff was bound to follow, and thus plaintiff could not have been contributorily negligent. However, if the conflict in the testimony remains, then the trial judge should again refuse to direct a verdict of zero contributory negligence. Although the suggestion by the seaman to the plaintiff may support a finding by the jury that the plaintiff's actions were reasonable, we hold that a suggestion by a fellow seaman, not amounting to an order, does not relieve the seaman from exercising his slight duty of care. If indeed the actions taken by the plaintiff were examples of "bad seamanship," then the jury might be warranted in finding that the plaintiff had not fulfilled his slight duty of care.[5] However, we pro-

---

5. The jury might find that the plaintiff breached a slight duty of care in using the frayed line at all. Although the frayed line was the first line and the one usually used, a jury might believe he should have spliced the bad line or used another one as indicated by Mr. Vierra's testimony. Although *Mahnich v. S.S. Co., su-* *pra*, 321 U.S. at 103, 64 S.Ct. at 455, has been cited for the proposition that a seaman has no duty to choose between good and bad equipment, we interpret the Supreme Court's language in that case to mean that providing good equipment in addition to poor equipment does not excuse the owner's failure to provide the

vide a word of caution to the trial court in allowing the argument that plaintiff was contributorily negligent in placing himself in a position of danger. This argument is too closely akin to an impermissible assumption of the risk argument,[6] and apparently was rejected by the court in *Williams II, supra,* 549 F.2d at 978, as not contributing to the injury.

Because we have reversed the case on another issue, we need not reach the plaintiff's third argument concerning the adequacy of the verdict. The case is reversed and remanded for a new trial in accordance with our instructions.

REVERSED and REMANDED.

---

safe equipment. That case involved the assumption of the risk defense rather than a contributory negligence defense, and we find that in mitigating damages a jury may consider the seaman's choice of equipment.

6. Assumption of the risk is not a defense under the Jones Act. *Socony-Vacuum Oil Co. v. Smith,* 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1938).