United States Court of Appeals,

Fifth Circuit.

Nos. 92-7058, 92-7310.

POLYTHANE SYSTEMS, INC., Plaintiff-Counter Defendant-Appellee,

v.

MARINA VENTURES INTERNATIONAL, LTD., and Marina Ventures, Ltd., Defendants-Counter Plaintiffs-Appellants,

and

Constellation Place Corporation, and LF Marina Corporation, Counter Plaintiffs-Appellants.

June 28, 1993.

Appeals from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, DUHÉ, Circuit Judge, and MAHON[1], District Judge.

DUHÉ, Circuit Judge:

Two marina floating dock systems began to lose buoyancy. The manufacturer of the polyurethane flotation foam used in the docks' construction was notified that its product may be defective. In a preemptive move, the foam manufacturer sued for declaratory judgment, requesting that the court determine what liability, if any, it may have for the docks' problems. The designer, builder, and owners of the docks filed counter-claims. A jury found that the flotation foam was not defective, and that the manufacturer was not liable. Finding no reversible error, we affirm.

Background and Procedural History

Two marinas in Baltimore, Maryland, the Anchorage Marina and the Licorice Factory Marina (the "Baltimore Marinas"),[2] were developed by Marina Ventures International, Ltd. ("MVI"). Marina Ventures, Ltd. ("MV")[3] built these facilities using a floating dock system comprised of laminated

---

[1]District Judge of the Northern District of Texas, sitting by designation.

[2]The marinas are owned by cooperatives made up of the owners of the boat-slips in the respective marinas. Constellation Place Corporation owns the Anchorage Marina, and LF Marina Corporation owns the Licorice Factory facility.

[3]These entities will be referred to collectively as "Marina Ventures," unless it is necessary to distinguish between them.

wood decking attached to pontoons filled with polyurethane flotation foam. The docks are anchored to a series of pilings driven into the seabed. This construction allows the docks to rise and fall with the tide.

Polythane Systems, Inc. ("PSI") manufactured some of the flotation foam used in the Baltimore Marinas. PSI shipped the foam as two liquids which were later blended together at the jobsites to produce solid foam material.

The marinas began to experience a loss of "freeboard," the distance between the docks and the water. Marina Ventures requested that PSI send a representative to inspect this problem. PSI declined to do so, stating that there was no indication that the loss of freeboard was attributable to their foam; moreover, there was a question as to whether PSI foam was used in the problem areas.

In reaction to Marina Ventures' allegations that it had sold defective flotation foam, PSI filed a declaratory judgment action in district court in Texas. Marina Ventures responded with motions to dismiss for lack of personal jurisdiction, and to transfer the action to the District of Maryland, where they were involved in litigation against another flotation foam manufacturer. A magistrate judge recommended against transfer, and that personal jurisdiction over the Appellants was properly exercised. The district court adopted these conclusions. Trial proceeded, and the jury returned a verdict against the Appellants. The court then assessed costs against Marina Ventures. We are urged to find error in a host of actions taken by the district court, including its assessment of costs against Appellants.

Discussion

1. *Personal Jurisdiction*

Appellants first contend that the district court improperly exercised personal jurisdiction over them. Marina Ventures International, Ltd. ("MVI"), and Marina Ventures, Ltd. ("MV"), are both organized under the laws of Maryland; neither maintains an office or an agent for service of process in Texas. The owners of the respective marinas have no contacts with Texas. PSI is a Texas corporation, whose principal place of business is Spring, Texas. Diversity of the parties provided jurisdiction for PSI's declaratory judgment petition. 28 U.S.C. § 1332(a).

MVI was responsible for paying suppliers, including PSI, and for providing financing for these projects. *See* R. vol. III, at 440 (Deposition of Gary Sheide); *Id.* at 427 (Deposition of Gale J. Brimhall). Floatec International Corp., a Texas corporation, was engaged by MVI to apply the polyurethane foam supplied by PSI.

MV actually built the marinas. The orders for PSI flotation foam were placed on MV purchase-order forms, and were often signed by Gary Sheide, MV's president. PSI would mix the components for the foam at their Texas facility, and ship the drums "F.O.B. Plant." Payments were made via mail to PSI in Texas.

"A nonresident defendant is amenable to personal jurisdiction in a federal diversity suit to the extent permitted by a state court in the state in which the federal court resides." *Bullion v. Gillespie,* 895 F.2d 213, 215 (5th Cir.1990) (citing *Cycles, Ltd. v. W.J. Digby, Inc.,* 889 F.2d 612, 616 (5th Cir.1989); *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1264 (5th Cir.1983)). Our inquiry thus starts with a review of the Texas Long-Arm Statute.[4] Next, we address whether the statutory exercise of jurisdiction comports with the due process concerns of the fourteenth amendment. *See Jones v. Petty-Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.), *cert. denied, ---* U.S. ----, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992).

The Texas Long-Arm Statute reaches as far as constitutionally permitted, and the personal jurisdiction inquiry collapses into one of due process only. *Bullion,* 895 F.2d at 216; *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 372-73 (5th Cir.1987). This results in the familiar two-pronged analysis: (1) minimum contacts with the forum state; and (2) the exercise of personal jurisdiction, under the circumstances, must not offend "traditional notions of fair play and substantial justice." *Command-Aire Corp. v. Ontario Mechanical Sales & Service, Inc.,* 963 F.2d 90, 94 (5th Cir.1992) (internal citations omitted).

Personal jurisdiction over a nonresident defendant can be general or specific. *Bullion,* 895 F.2d at 216. General jurisdiction arises when the nonresident defendant maintains systematic and continuous contacts with the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466

---

[4]Tex.Civ.Prac. & Rem.Code Ann. §§ 17.041-.045 (Vernon 1986).

U.S. 408, 415-16, 104 S.Ct. 1868, 1872-73, 80 L.Ed.2d 404 (1984).

In the instant dispute, the Appellants' contacts with Texas cannot support general jurisdiction. Therefore, we review whether the court properly exercised specific jurisdiction. Physical presence in the forum state is not determinative; rather "[t]he appropriate inquiry is whether the defendant purposefully availed [itself] of the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum state's laws.... Jurisdiction is improper if grounded in the unilateral activity of the plaintiff." *Bullion,* 895 F.2d at 216 (internal citations omitted).[5]

Appellants MV and MVI purposefully availed themselves of the privilege of conducting business in Texas. At the outset, we note that the contract, as evinced by the purchase orders and corresponding invoices, shows that the mixing and packaging of the flotation foam was performed in Texas. The place where the contract is performed is a "weighty consideration" in ascertaining whether or not specific jurisdiction is properly exercised. *Command-Aire Corp.,* 963 F.2d at 94. Once mixed, the foam was delivered to a common carrier in Texas, where title passed to PSI.[6] *See Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 372-73 (5th Cir.1987) (location where title passes is factor in analyzing jurisdictional question). Payments were made to PSI, by mail, at its Texas offices. This buyer-seller relationship continued for over three years. MVI also engaged Floatec, another Texas corporation, to apply the flotation foam supplied by PSI. Furthermore, both the Appellee's declaratory judgment action and the Appellants' counter-claims stem from the sales of flotation foam.

Aggregating the Appellants' contacts with Texas, it is clear that their connections " "were deliberate, rather than fortuitous, so that the possible need to invoke the benefits and protections of

---

[5]*See also Standard Fittings Co. v. Sapag, S.A.,* 625 F.2d 630, 643 (5th Cir.1980) (" "[T]he operative consideration is that the defendant's contacts with the forum state were deliberate, rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise.' ") (quoting *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 496 (5th Cir.1974)), *cert. denied,* 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981).

[6]*See* Tex.Bus. & Com.Code § 2.401 (Vernon 1968) (Title passes at "the time and place at which the seller completes performance with reference to the physical delivery of the goods[.]"). PSI's invoice stated that the place of delivery was "F.O.B. Plant." Consequently, PSI's obligations as a seller were complete when it placed the foam in possession of the common carrier at its Texas plant. *See* Tex.Bus. & Com.Code § 2.319(a)(1) (Vernon 1968).

the forum's laws was reasonably foreseeable....' " *Standard Fittings Co. v. Sapag, S.A.,* 625 F.2d 630, 643 (5th Cir.1980) (quoting *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 496 (5th Cir.1974)), *cert. denied,* 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981).

Turning to the second prong of the due process inquiry, we evaluate whether the exercise of jurisdiction over the Appellants offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 105, 107 S.Ct. 1026, 1028, 94 L.Ed.2d 92 (1987); *see Command-Aire Corp.,* 963 F.2d at 94; *Bullion,* 895 F.2d at 216. The *Command-Aire Corp.* court noted that "[t]his assessment requires examination of the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the shared interest of the several states in furthering fundamental social policies." *Command-Aire Corp.,* 963 F.2d at 95.

Although Texas may be less convenient for Appellants than a Maryland forum, we cannot say that prosecution of the action in Texas was unreasonable or unfair. Marina Ventures was able to lodge its counter-claims in responding to PSI's petition for declaratory judgment. No witnesses or documents were shown to be unavailable to Appellants in Texas, despite the distance from Marina Ventures' offices in Maryland. The forum state's interest stems from the involvement of two of its corporate citizens in this action—PSI and Floatec. PSI, as the declaratory judgment plaintiff, assuredly had an interest in ascertaining what liability it may have for the marinas' problems. PSI likewise would have a legitimate interest in defending its product's reputation against Appellants' claims that the flotation foam was defective.

Determinations regarding the exercise of personal jurisdiction over non-resident defendants must be made on a case-by-case basis. *See D.J. Investments, Inc., v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 544 (5th Cir.1985). On balance, the Appellants have failed to persuade us that the proceedings in Texas were offensive to the notions of fair play or substantial justice. The parties had an ongoing business relationship, and the Appellants' contacts with the forum state were not fortuitous. Personal jurisdiction was appropriately exercised. *See Command-Aire Corp.,* 963 F.2d at 95; *D.J. Investments, Inc.,* 754 F.2d at 547-48. *Compare Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773 (5th Cir.1986) (single contract executed in forum state insufficient to support specific

jurisdiction), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026 (5th Cir.1983) (goods manufactured in Texas, payment made there, and buyer's representative visited state, *held* not dispositive on jurisdictional issue; contract repeatedly stated that all disputes governed by Alaskan law), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984).[7]

2. *Forum Non Conveniens*

"We review the district court's forum non conveniens determination for abuse of discretion." *Command-Aire Corp.,* 963 F.2d at 95. In response to a motion for dismissal on the basis of forum non conveniens, the court must first ascertain that there is a suitable alternative forum, and then balance the private and public interest factors. *Id.* (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). Additionally, while district courts should normally respect a plaintiff's forum choice, "[c]onvenience is at the heart of the inquiry." *Id.* (citing *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.,* 955 F.2d 368 (5th Cir.1992)). The district court found that: (1) the majority of PSI's witnesses and all of its documents were located in Texas; (2) Marina Ventures' expert, counsel, and the majority of their documents were located in Louisiana; and (3) Marina Ventures made no showing of necessary witnesses residing in Maryland who would be unable to attend the trial in Texas. R.vol. III, at 636. The record bears out the correctness of these findings. The district court did not abuse its discretion in denying transfer on the basis of forum non conveniens.

---

[7]PSI's invoices contained a provision stating, "It is mutually agreed by and between the parties hereto that this contract shall be construed under the laws of the State of Texas." This language is located on the back of the invoices. A purchaser's attention is directed to the invoice's flip-side by a disclaimer at the bottom of the invoice:

> TERMS AND CONDITIONS: NOTWITHSTANDING ANY CONTRARY OR INCONSISTENT CONDITIONS THAT MAY BE EMBODIED IN YOUR PURCHASE ORDER, YOUR ORDER IS ACCEPTED SUBJECT TO THE ... TERMS AND CONDITIONS PRINTED ON THE REVERSE SIDE THEREOF.

> Between merchants, additional terms in the acceptance of an offer become part of the contract, unless (1) the offer limits acceptance to its terms; (2) the terms materially alter the offer; (3) the offeror gives seasonable notice that he objects to the new terms. Tex.Bus. & Com.Code § 2.207(b) (Vernon 1968).

3. *Admission of Expert's Report*

During the cross-examination of Eric Walle, Marina Ventures' expert witness, counsel for PSI engaged him in the following exchange:

> PSI COUNSEL: Now, you mentioned—you referred to Dr. Kaye's report. You have reviewed Dr. Kaye's report, have you not?
>
> WALLE: That's correct.
>
> COUNSEL: And you've used Dr. Kaye's reports in coming to your opinions?
>
> WALLE: Some of it, yes.
>
> COUNSEL: And you relied upon that report when you gave your deposition, when you gave your opinions; is that correct?
>
> WALLE: That's correct.

R.vol. VIII, at 413-14. Dr. Howard Kaye was listed in the pretrial order as a testifying expert witness for PSI. However, he did not testify. On the basis of Walle's reliance on Kaye's report, PSI offered it into evidence. Appellants' counsel promptly objected, but the court admitted the document.[8]

The fact that Marina Ventures' expert relied on portions of Kaye's report does not make the report admissible. Federal Rule of Evidence 705 provides that an expert may give an opinion on a matter without prior disclosure of the facts or data underlying his opinion, unless the court requires otherwise. "The expert may in any event be required to disclose the underlying facts or data on cross-examination." Fed.R.Evid. 705. While revealing the basis for an expert's opinion is allowed, such disclosure does not facilitate the admission of otherwise inadmissible evidence. *See United States v. Mest,* 789 F.2d 1069, 1073-74 (4th Cir.1986); *United States v. Dyer,* 752 F.2d 591, 593 (11th Cir.1985); *Bobb v. Modern Products, Inc.,* 648 F.2d 1051, 1055 (5th Cir.1981); *Bryan v. John Bean Division of FMC Corp.,* 566 F.2d 541, 546-47 (5th Cir.1978).

In *Box v. Swindle,* 306 F.2d 882 (5th Cir.1962), a pre-Federal Rules of Evidence case, we held that the contents of a report prepared by a non-testifying expert could be admitted if a testifying

---

[8]Kaye's report contradicted testing done by Marina Ventures' experts regarding the closed-cell content of the flotation foam. A higher percentage of closed cells is desirable, as this molecular structure is less likely to be permeated by water. Kaye's tests indicated that the PSI foam met Marina Ventures' specifications.

expert bases his present opinion on, or testifi es directly from, such a report. *Id.* at 887. Certain limitations apply, however, and the evidence should be admitted only for the limited purpose of discrediting or impeaching the testifying expert and the jury should be carefully instructed about its restricted use. *Id.* This reasoning was carried over into cases decided after the Federal Rules of Evidence were adopted. *See Bryan v. John Bean Div. of FMC Corp.,* 566 F.2d 541, 546 (5th Cir.1978). *Bryan* is especially instructive on this point.

In *Bryan,* the Defendant's testifying metallurgical expert (Walters) based his opinion partially on the reports of two nontestifying experts—one expert for the Plaintiff, and one expert for the Defendant. Both of these experts had compiled written reports of their findings, and each report contained opinions on the ultimate issue in dispute. On the cross-examination of Walters, Plaintiff's counsel referred extensively to these reports, quoting from them verbatim. Later, counsel referred to them in his jury arguments. The *Bryan* court noted that, "He made much greater use of the opinions than of the data underlying them." *Id.* at 544. The Defendant objected to the use of these non-testifying expert reports on the ground that, although the facts recited in the reports might be admissible, the opinions of the non-testifying experts were not. The district court overruled this objection, stating that the opinions were admissible because they were supporting data for Walters's opinion. The court gave a limiting instruction that the reports were only to be considered as the basis for the testifying expert's opinion.

On appeal, the admission of information contained in these reports was held to be reversible error. The excerpts quoted by Plaintiff's counsel lacked any independent guarantee of trustworthiness that would have justified dispensing with cross-examination of the expert who prepared the report. *Id.* at 546. Additionally, the *Bryan* court stated that "to admit the hearsay opinion of an expert not subject to cross-examination goes against the natural reticence of courts to permit expert opinion unless the expert has been qualified before the jury to render an opinion." *Id.* at 546.

We are faced with such a dilemma in the present case. There was no opportunity to cross-examine Kaye regarding the methodology he employed, statistical discrepancies in his report, or any other matters which might illuminate shortcomings in his work. Moreover, PSI used Kaye's

report in a substantive manner—counsel was able to introduce Kaye's conclusions into evidence.[9] This is well beyond the limits discussed in *Box v. Swindle* or *Bryan.* Consequently, the admission of Kaye's report was error. This does not end our inquiry. We must address whether the error was harmless under Federal Rule of Civil Procedure 61.[10] *See United States v. Scott,* 678 F.2d 606, 612 (5th Cir.), *cert. denied,* 459 U.S. 972, 103 S.Ct. 304, 74 L.Ed.2d 285 (1982). We will not disturb an evidentiary ruling, albeit an erroneous one, unless it affects a substantial right of the complaining party. *See* Fed.R.Evid. 103(a); *Foster v. Ford Motor Co.,* 621 F.2d 715, 721 (5th Cir.1980).

The introduction of Kaye's report occurred on the third day of a four day jury trial, which produced a trial transcript in excess of nine hundred pages. Including the predicate testimony quoted above, seven pages contain discussions regarding the report's results. *See* R.vol. VIII, at 413-19. The thrust of this discussion was aimed at rebutting Marina Ventures' expert's contention that PSI sold Marina Ventures defective foam.

That experts differ on whether or not a product is defective is not unusual; the flaw in this case was that the contradicting opinion was offered in the form of hearsay evidence. If this was the only evidentiary peg on which the jury could hang its verdict, the report's admission would be reversible error. Such is not the case; the Appellee offered several explanations for the loss of

---

[9]*See Bryan,* 566 F.2d at 546-47:

> The fact that other experts reached a different conclusion goes to the weight of Walters's conclusions. Since Walters's testimony could only be undercut by arguing the substantive correctness of the other expert's conclusions, this evidence should have been brought out, if at all, on direct examination of the reporting experts. As it occurred in trial, however, the nonimpeaching evidence was argued substantively, violating the hearsay rule, without permitting cross-examination to the defendants.

[10]Rule 61 provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict ... unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Fed.R.Civ.P. 61; *see also* Fed.R.Evid. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]").

freeboard at the Baltimore Marinas.[11]  Considering the record as a whole, we conclude that the erroneous admission of Kaye's report was harmless and did not effect any substantial rights of Appellants.  *See Koonce v. Quaker Safety Products & Mfg. Co.,* 798 F.2d 700, 720 (5th Cir.1986); *Pregeant v. Pan American World Airways, Inc.,* 762 F.2d 1245, 1249 (5th Cir.1985);  *see also United States v. Underwood,* 588 F.2d 1073, 1076 (5th Cir.1979), ("An error is harmless if the court is sure, after reviewing the entire record, that the error did not influence the jury or had but a very slight effect on its verdict.").

4. *Witness Sequestration*

The district court imposed the witness sequestration rule, and excluded all witnesses from the courtroom proceedings.  Fed.R.Evid. 615.[12]  Appellants argue the district court erred in excluding Elige Grant, Marine Venture's in-house engineer, after Grant completed his testimony.  In Grant's absence, the Appellants maintain they were unable to effectively cross-examine Guerry Taylor, PSI's expert witness.  Alternatively, it is urged that the court erred in not permitting Grant to retake the stand for rebuttal purposes.

Appellants contend that Grant should have been exempt from the sequestration order as a person whose presence during the proceedings is "essential to the presentation of [its] cause."

---

[11]For example, PSI offered testimony that it was improper to copy a marina design in a "cookie cutter fashion," as Appellants had done with the Licorice Factory Marina.  *See* R.vol. IX, at 719. Also, there was evidence presented that the laminated wood decking contained too much oil, and that this caused caulking between the pontoons and the decking to crack and fall off.  Water entered the pontoon shells and could not escape, thus increasing their weight and decreasing their buoyancy.  *Id.* at 680.  Finally, much was made of the fact that Marina Ventures did not have a professional engineer on its staff at the time the Licorice Factory Marina was built.  *See* R.vol. VII, at 133-39.

[12]Federal Rule of Evidence 615 provides:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion.  This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

Fed.R.Evid. 615(3).[13]  Whether or not a witness is essential, and hence should be exempt from Rule 615 exclusion, is a matter soundly within the discretion of the trial court.  We will not upset this determination absent an abuse of that discretion.  *See United States v. Agnes,* 753 F.2d 293, 306 (3rd Cir.1985);  *Government of Virgin Islands v. Edinborough,* 625 F.2d 472, 475 (3rd Cir.1980); *Windsor Shirt Co. v. New Jersey Nat'l Bank,* 793 F.Supp. 589, 617 (E.D.Pa.1992).

Expert witnesses clearly fall within Rule 615(3)'s exception.  The Advisory Committee's notes state that 615(3) "contemplates such persons as an agent who handled the transaction ... or an expert needed to advise counsel in the management of the litigation."  Fed.R.Evid. 615 advisory committee's note.  We have previously acknowledged as much.  *See T.J. Stevenson & Co. v. 81,193 Bags of Flour,* 629 F.2d 338, 384 (5t h Cir.1980) (court "probably required" to allow expert to remain in courtroom).  The *T.J. Stevenson & Co.* court cited *Morvant v. Construction Aggregates Corp.,* 570 F.2d 626 (6th Cir.1978), *cert. denied,* 439 U.S. 801, 99 S.Ct. 44, 58 L.Ed.2d 94 (1978), as support for this proposition.  *Morvant,* is particularly instructive on this point:

> We perceive little, if any, reason for sequestering a witness who is to testify in an expert capacity only and not to the facts of the case....  Theoretically at least, the presence in the courtroom of an expert witness who does not testify to the facts of the case but rather gives his opinion based upon the testimony of others hardly seems suspect and in most cases will be beneficial, for he will be more likely to base his expert opinion on a more accurat e understanding of the testimony as it evolves before the jury.

*Morvant,* 570 F.2d at 629-30.

The reasoning of *Morvant* does not apply to this case for several reasons.  First, Grant was not designated as a Rule 702 expert witness.  Appellants' tendered Grant only as a Rule 701 lay witness whose opinions were based on his personal perceptions.  *See* R.vol. VIII, at 358.  Rule 615(3) does not indicate that a Rule 702 expert witness designation is a prerequisite for exemption; 615(3) requires a showing that a person is "essential" to the presentation of a case.  However, Grant was going to testify as a fact witness and not as an expert giving opinion testimony based on the

---

[13]While Appellants do not cite to this subsection, 615(3) is the only exception that Grant could fall under.  The first exception is not relevant (party who is a natural person).  The second proviso, representative of a party which is not a natural person, is also inapplicable.  Appellants' counsel designated Gary Sheide, President of Marina Ventures, Ltd., and Scott Stevenson, President of Marina Ventures International, Ltd., as the representatives for the corporate Appellants.  *See* R.vol. VI, at 24.

testimony of others. Grant's exception from the sequestration order may well have violated the policy reasons behind Rule 615, *i.e.* preventing witnesses from "tailoring" their testimony. *See Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1373-74 (5th Cir.1981); *Morvant,* 570 F.2d at 629-30; *Skidmore v. Northwest Engineering Co.,* 90 F.R.D. 75, 76 (S.D.Fla.1981).

Discussion over Grant's ability to assist counsel in the cross-examination of PSI's expert witness is also relevant:

> COUNSEL: I don't have an expert on this. This was the man that was to annotate this thing for me.
>
> THE COURT: I can't help that. I admonished both counsel at the pretrial conference that it would be the responsibility of counsel to bring to the Court's attention who fell within or out of the rule, and those were clear and unambiguous instructions.
>
> COUNSEL: You're basically correct.

*Id.* at 434-35. Both parties were given the opportunity to exempt necessary participants from the reach of the court's Rule 615 order. Appellants did not avail themselves of this opportunity. After a careful review of the record, we are unpersuaded that the district court's actions, in respect to the exclusion of Grant, was an abuse of discretion.

5. *Evidentiary Errors*

A. *Problems with Boston and Hong Kong Marinas*

Appellants complain that the court erred in permitting testimony concerning problems experienced at marinas in Hong Kong and Boston. These marinas were also built by Appellants using the floating dock design employed in the Baltimore Marinas. We fail to see how Appellants can claim error regarding the introduction of testimony on the Boston marina. During the direct examination of its first witness, Marina Ventures' itself placed into evidence a video tape of that facility. *See* R.vol. VII, at 63.

Marina Ventures opened the door on the subject of the Hong Kong project when Gary Sheide testified that Marina Ventures was working on a project in Hong Kong, *see* R. vol. VII, at 83; and that no other Marina Ventures project experienced loss of freeboard. *Id.* at 72. Appellee was entitled to rebut that testimony. *See Jones v. Southern Pac. R.R.,* 962 F.2d 447, 450 (5th Cir.1992).

PSI then cross-examined Marina Ventures' expert witness on the subject. *See* R.vol. VII, at

373. Later, PSI's expert testified on the similarity of the problems being experienced by the Baltimore and Hong Kong marinas. *Id.* at 535. On cross, Marina Ventures questioned him on the basis for his opinion. *Id.* at 561. As its last rebuttal witness, Marina Ventures recalled Dwayne Stevenson to testify extensively on the problems being experienced with the Hong Kong marina. *See* R.vol. IX, at 831-33.

We conclude that it was not error to admit evidence regarding the Hong Kong project, and if it was error, it was harmless. *See United States v. Underwood,* 588 F.2d 1073, 1076 (5th Cir.1979).

B. *Subsequent Remedial Measures*

Appellants invite us to find error in the district court's ruling which allowed testimony concerning Marina Ventures' decision to put tops or seals on their pontoons. We decline to accept this invitation.

Evidence of subsequent remedial measures is inadmissible as evidence of a party's negligence. Fed.R.Evid. 407. Such evidence is permitted for other purposes, *e.g.* impeachment or to show feasibility of such measures. *See id.* advisory committee's note; *Mills v. Beech Aircraft Corp.,* 886 F.2d 758, 763 (5th Cir.1989). Here, Marina Ventures offered evidence that tops were not necessary to keep water out of the pontoons, and that their floating dock system is "one of the strongest in the world." R.vol. VIII, at 361 (testimony of Elige Grant); *see also* R.vol. VII, at 305 (testimony of Wayne Werner).

PSI offered the remedial evidence as an alternative explanation for the loss of freeboard at the Baltimore Marinas. Evidence of the remedial measures was not offered as proof of Marina Ventures' negligence, and the district court did not err in permitting it. *See Muzyka v. Remington Arms Co.,* 774 F.2d 1309, 1313 (5th Cir.1985) (Testimony that rifle was "best, strongest, safest rifle" opened the door for evidence that rifle had been redesigned subsequent to accident; necessary for "impeachment of the experts who spoke in these superlatives.").

6. *Costs*

The district court assessed costs against Appellants as permitted by 28 U.S.C. § 1920 (1988).

We review this award for abuse of discretion. *Fogleman v. Aramco,* 920 F.2d 278, 285 (5th Cir.1991). A bill-of-costs hearing was held and extensive testimony was presented. *See* R.vol XI (transcript of cost hearing). After carefully considering this evidence and reducing Appellee's requested fees for copies and exemplifications, the court assessed costs against Appellants. We are unpersuaded that the district court abused its discretion in this matter.

## Conclusion

After a thorough review of the record, we conclude that the other errors urged by the Appellants are without merit.

For the foregoing reasons, the judgment of the district court is, in all respects, AFFIRMED.